**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Gary Thomas BUTCHER,
Defendant-Appellant.**

**No. 76–3439.**

United States Court of Appeals,
Ninth Circuit.

July 15, 1977.

Danilo J. Becerra, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Leonard Sharenow, John D. Vandevlede, Earl E. Boyd, Asst. U.S. Attys., Los Angeles, Cal., for plaintiff-appellee.

Before BARNES, WALLACE and SNEED, Circuit Judges.

BARNES, Senior Circuit Judge:

Butcher appeals his conviction by a jury on a one-count bank robbery charge (18 U.S.C. § 2113(a)). He raises two issues:

I. Did the trial court err in permitting law enforcement officers to testify, solely on the basis of prior contacts and conversations with the defendant, that in their opinion the defendant was the person depicted in bank surveillance photographs?

II. Did the trial court err in refusing to give the special jury instruction on eyewitness identification requested by the defendant?

FACTS:

On May 18, 1976, a lone robber took approximately $1,500.00 from the Canoga Park branch of the United California Bank. At trial, the primary issue was whether or not the defendant was that robber. The prosecution presented the testimony of two bank tellers who identified the defendant as the bandit, and the surveillance photographs taken at the time of the robbery.[1]

The defendant's physical appearance at the time of trial was slightly different than his appearance at the time of his arrest and during the period prior to the robbery.[2] The trial court permitted the prosecution, over defendant's objection, to introduce the opinion testimony of two law enforcement officials and the defendant's state parole officer to the effect that the defendant was the individual depicted in the surveillance photographs. The bases for their opinion testimony were contacts over varying lengths of time with the defendant. All of the contacts had ended four months prior to the robbery.[3] Before the jury, the police officers were identified as such while the parole officer was merely described as a state employee. All three testified that the defendant was the person in the surveillance photographs.

At the close of trial, the defendant requested special instructions be given regarding the identification testimony.[4] The

---

1. The main defense argument was that the defendant was not the robber and that the "only similarity between Mr. Butcher and that bandit is the fact that he has long hair and a beard." (Reporter's Transcript ["R.T."] 26.) The defense attempted to establish the unreliability of the tellers' testimony. The only witness presented by the defense was another bank teller who had observed the robber for a few seconds prior to the commission of the robbery. Although she failed to pick out the defendant in a lineup identification, at trial when shown the surveillance photographs, she did state that the defendant looked similar to the man she observed on the day of the robbery.

2. The defendant is described as having a "Fu Manchu" moustache and a goatee during January of 1976. R.T. 97, 103, 114. At the time of his arrest, in July of 1976, he had a full beard. R.T. 79. During the trial, various witnesses stated that the defendant had less facial hair, principally insofar as his beard, than at the time of his arrest (R.T. 79) and during January of 1976 (R.T. 114, 118, 146). However, two of the witnesses who testified as to the defendant's appearance prior to the time of the robbery stated that his appearance at trial was

only "slightly" different (R.T. 97) or "about the same" except for the facial hair (R.T. 103).

3. Officer Doukakis testified that he had known the defendant for one and a half years and had been with him about three times for a total period of two and a half hours. (R.T. 96). Officer Fossey had seen the defendant on several occasions and had first met him in December 17, 1975. Fossey stated that he observed the defendant for a total time of between two and three hours. (R.T. 103–104). Parole Officer Parker had met the defendant about a dozen times between the months of December 1974 and January 1976 with each meeting lasting between 15 and 30 minutes. (R.T. 144–145).

4. The defendant's requested instructions were as follows:

"Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

"In appraising the identification testimony of a witness, you should consider the follow-

trial court rejected that request, as well as a separate request for special instructions

by the prosecution, and instead gave its own instructions.[5] The jury returned a

ing: (1) Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender? Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had had occasion to see or know the person in the past. (2) Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection? You may take into account both the strength of the identification, and the circumstances under which the identification was made. If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see defendant, as a factor bearing on the reliability of the identification. You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness. (3) You may take into account any occasions in which the witness failed to make an identification of defendant, or made an identification that was inconsistent with his identification at trial. (4) Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony. I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty." (Clerk's Record ["C.R."] 91–92.)

5. The trial court's instructions were:
"You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor and manner while on the stand. Consider the witness' ability to

observe the matters as to which he has testified, and whether he impresses you as having an accurate recollection of these matters. (R.T. 185)

"Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently; and innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.'

"After making your own judgment, you will give the testimony of each witness such credibility, if any, as you may think it deserves. The testimony of a witness may be discredited or impeached by a showing that he previously made statements which are inconsistent with his present testimony. The earlier contradictory statements are admissible only to impeach the credibility of the witness, and not to establish the truth of the statements. It is the province of the jury to determine the credibility, if any, to be given to the testimony of a witness who has been impeached. If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness' testimony in other particulars; and you may reject all the testimony of that witness or give it such credibility as you may think it deserves." (R.T. 185–186).

"Police officers have testified in this case. No conclusion about the defendant's behavior should be drawn from this, and it would be improper to do so. You are not obliged to accept the testimony even though the testimony is uncontradicted and the witness is not impeached. You may decide, because of the witness' bearing and demeanor, or because of the inherent improbability of his testimony, or for other reasons sufficient to you, that such testimony is not worthy of belief." (R.T. 186).

"The evidence in this case raises the question of whether the defendant was in fact the criminal actor and necessitates your resolving any conflict or uncertainty in testimony on that issue.

"The burden of proof is on the prosecution with reference to every element of the crime charged, and this burden includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime charged. Evidence that at some other time a witness, other than the accused, has said or done something, or has failed to

guilty verdict and the defendant here appeals.

## I. *Lay Opinion Testimony by the Police and State Parole Officers.*

The propriety of using police and parole officers to obtain lay opinion identifications of the defendant as the person in surveillance photographs must be considered in light of constitutional requisites as well as whether the trial court abused its discretion in permitting the introduction of such testimony.

Initially, it is noted that no reference was ever made to the jury that the defendant had a prior felony conviction or that he had ever been arrested on a charge other than the one involved in the present trial. Hence any error would only stem from the use of lay opinion identifications by the police officers which are solely based upon prior contact with the defendant. Although no federal cases are cited on this issue by either party and none have been found after independent research, it is clear that the introduction of such testimony did not, by itself, amount to an error of constitutional proportions.

Turning to the question of whether the trial court abused its discretion in allowing such testimony, the identifications by the police officers here fall within the perimeters of Rule 701 of the Federal Rules of Evidence in that their opinions were rationally based on prior contacts and conversations with the defendant and definitely pertained to the determination of the fact in

issue.[6] *Cf. United States v. Murray*, 523 F.2d 489, 491 n.1 (8th Cir. 1975). Nevertheless, two concomitant problems arise with that testimony. First, there arises a question of whether the testimony improperly invaded the province of the jury. None of the police officers had any knowledge of the way the defendant looked at the time the robbery occurred. Consequently, their identifications were based solely upon their prior perceptions of the defendant. Because the defendant's appearance at the time of trial more closely resembled the individual depicted in the surveillance photographs than it resembled his appearance during the period the officers saw him,[7] the determination of whether the defendant was the person in the photographs could perhaps have been made by the jury without the officers' testimony. No evidence was submitted that the photographs did not clearly depict the robber, or that the defendant's appearance had so radically changed that additional identification evidence was necessary. Second, the use of the identifications by the police officers, while constitutionally permissible, did increase the possibility of prejudice to the defendant in that he was presented as a person subject to a certain degree of police scrutiny. Rule 403 of the Federal Rules of Evidence provides that "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."

In deciding this issue, and in weighing the matter, two cases appear somewhat, if not directly, in point.[8] In *People v. Van*

---

say or do something, which is inconsistent with the witness' testimony at the trial, may be considered by the jury for the sole purpose of judging the credibility of the witness; but may never be considered as evidence of proof of the truth of any such statement." (R.T. 187).

6. Rule 701 of the Federal Rules of Evidence states that:

   "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."

7. *See* footnote 2, *supra*. At trial the defendant had what is described as "long hair" and a beard. (R.T. 26.) The person in the surveillance photographs also had long hair and a beard although his hair and beard were "fuller." (R.T. 88, 97, 103.) None of the police officers had ever seen the defendant with a beard but merely with a moustache and/or goatee. (R.T. 114–115, 118, 146.)

8. There is a line of cases in this circuit regarding the use of police officers as *expert* identification witnesses. *See, e. g., United States v. Pratt*, 531 F.2d 395, 398 (9th Cir. 1976); *United States v. Burke*, 506 F.2d 1165, 1169–1170 (9th Cir. 1974), *cert. denied*, 421 U.S. 915, 95 S.Ct.

*Perry*, 60 Cal.App.3d 608, 613, 131 Cal.Rptr. 629, 632 (1976), a California Appellate Court permitted similar identifications of a robber in surveillance photographs both by a police officer who had prior contact with the defendant, and by the defendant's parole officer. The court justified the admission of those identifications, and other testimony, stating: [9]

"Evidence was introduced that defendant, prior to trial, altered his appearance by shaving his mustache. The witnesses were able to apply their knowledge of his prior appearance to the subject in the film. Such perception of knowledge was not available directly to the jury. The opinions of the witnesses were sufficiently based upon personal knowledge to permit their introduction; the question of the degree of knowledge goes to the weight rather than to the admissibility of the opinion."

Conversely, the Sixth Circuit in *United States v. Calhoun*, 544 F.2d 291 (6th Cir. 1976), held that the trial court abused its discretion in admitting lay opinion testimony of defendant's parole officer, identifying defendant as the robber shown in surveillance photographs, without requiring an initial demonstration from the government of the necessity of using the probation officer, instead of some other witness. The reasoning for the holding was that the defendant could not freely examine the relationship between the defendant and the witness without revealing the prejudicial fact that the defendant was on probation at the time of the robbery. We need not decide the validity of the rule established in *Calhoun* as we deem it inapplicable to the present case. Here, a hearing on the admissibility of the police and the parole officers' testimony was conducted outside the presence of the jury, similar to the one suggested in *United States v. Brown*, 501 F.2d 146, 149 (9th Cir. 1974), *rev'd on other grounds*, 422

U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). At that time, the defendant could have, but failed to, extensively examine the relationship between the defendant and the witnesses.

Balancing the probative value of the lay opinion testimony with the potential prejudice to the defendant, it is not grossly evident that the balance clearly tips in favor of the admission of such testimony. Given the level of review inherent in the abuse of discretion standard, however, it is likewise not obvious that the trial court judge committed reversible error in permitting such identification. His "discretion . . . may not be disturbed absent [a] clear abuse." *Id.* See also, *United States v. Pierson*, 164 U.S.App.D.C. 82, 503 F.2d 173, 176 (1974); *Unitec Corporation v. Beatty Safway Scaffold Co. of Oregon*, 358 F.2d 470, 477, 478 (9th Cir. 1966). In this case there was ample evidence in the record to support the conviction, aside from the testimony of the officers. Therefore, even if the admission of the testimony was in error it was not prejudicial. *Cf. United States v. Pratt*, 531 F.2d 395, 398 (9th Cir. 1976); *United States v. Trejo*, 501 F.2d 138, 143 (9th Cir. 1974); *Brown, supra*, 501 F.2d at 150. We do think, however, that use of lay opinion identification by policemen or parole officers is not to be encouraged, and should be used only if no other adequate identification testimony is available to the prosecution.

## II. *Jury Instruction on Identification.*

It is clearly the law of this circuit that the giving of a jury instruction on identification is largely within the discretion of the trial judge. *United States v. Masterson*, 529 F.2d 30, 32 (9th Cir.), *cert. denied*, 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976); *United States v. Sambrano*, 505 F.2d 284, 286 (9th Cir. 1974).

---

1576, 43 L.Ed.2d 781 (1975); *United States v. Brown*, 501 F.2d 146 (9th Cir. 1974), rev'd on other grounds, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *United States v. Trejo*, 501 F.2d 138, 142–143 (9th Cir. 1974). Such cases are not entirely applicable to this case, which

involves *lay* opinion testimony by police officers.

**9.** The defendant in *Van Perry* did have an abnormal right eye which made identification easier.

The identifications by the witnesses herein were not, in total, so nebulous or unfounded as to warrant the particularly restrictive instructions requested by the defendant. Likewise, the presence of the surveillance photographs and the available eyewitness identification diminished the need for the cautionary instructions. *Masterson, supra,* 529 F.2d at 32. Reviewing the lengthy instructions given by the trial court, we find them to be, taken as a whole, undoubtedly adequate and fair to the defendant.

The judgment of the District Court is *AFFIRMED.*