**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Portouando STUBBLEFIELD,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Debra Lynn STOKES,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Eladio Uy STUBBLEFIELD,
Defendant-Appellant.**

Nos. 78–1773, 78–1785 and 78–1812.

United States Court of Appeals,
Ninth Circuit.

June 18, 1980.

Richard L. Rosenfield, Los Angeles, Cal., for Portouando Stubblefield.

Donald B. Marks, Beverly Hills, Cal., for Debra Stokes.

Tom G. Kontos, Los Angeles, Cal., for Eladio Stubblefield.

Deanne H. Smith, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before TRASK and ANDERSON,* Circuit Judges, and McNICHOLS,** District Judge.

TRASK, Circuit Judge:

On January 11, 1978, a federal grand jury returned a one-count indictment charging appellants Debra Lynn Stokes, Portouando Juan Stubblefield, Eladio Stubblefield and Lloyd Wayne Ransome with armed bank robbery in violation of 18 U.S.C. §§ 2113(a) & (d). They appeared before the district court on January 17, 1978 and entered pleas of not guilty. Thereafter on February 8, 1978, Lloyd Ransome entered a plea of guilty to the charge of bank robbery in violation of 18 U.S.C. § 2113(a). A motion to suppress evidence was filed seeking suppression of all evidence seized by the arresting officers. The court held an evidentiary hearing on the motions, denied them, and the case was tried to a jury. Debra Stokes, Portouando Stubblefield and Eladio Stubblefield were found guilty and sentenced. Each appealed and those proceedings were consolidated in this court. We affirm.

There was positive identification of the three negro males and one negro female who participated in the robbery. That identification consisted of photographs by a surveillance camera; Norma Parra, a bank teller; Gwen Baxter, a second bank teller; and the positive testimony of Lloyd Ransome, the participant who changed his plea from not guilty to guilty. Ransome testified in open court that he, Debra Stokes, Portouando Stubblefield, and Eladio Stubblefield robbed this particular bank on the day in question. He identified each of his companions in open court, his companions and himself in the surveillance photographs, the items of evidence seized from 425 West 55th Street, the items of clothing worn by the defendants, and the automobile used in the robbery. None of the defendants testified on their own behalf or called any witnesses on the defense case.

Officers Simms and Brannon, who made the arrests, were on automobile patrol in the area at the time of the robbery and were notified of it within minutes by a police broadcast and some six supplemental broadcasts. The information received consisted of descriptions of the persons involved, *i.e.* three black males and one black female, the clothing worn and weapons used, and the car driven, *i.e.* a red Pontiac GTO with California license plates numbered YLA–015 registered to Eladio Stubblefield at 425 West 55th Street, Los Angeles.

---

* Judge Anderson was assigned to replace Judge Hufstedler on the panel upon her appointment to become Secretary of Education.

** Honorable Ray McNichols, Chief Judge, United States District Court, District of Idaho, sitting by designation.

At that address the officers found and identified the automobile and placed under arrest Eladio Stubblefield, Lloyd Ransome, and Portouando Stubblefield as they came out of the house. The officers asked whether anyone else remained in the house and were told that "Debbie and the baby are in there." Using a patrol car loudspeaker system, Officer Simms several times requested that anyone remaining come out. When no one did, the two officers entered through an unlocked door to search for the female suspect. As they walked through the house they observed and seized items of evidence in plain view; a black pin-striped coat worn in the robbery; a cloth bag marked "Bank of America"; a mask; a plastic bag; a briefcase; and currency strewn around in several places including the floor, the bath tub, and in articles of clothing.

On appeal it is claimed by appellants that the items of physical evidence were illegally seized without a warrant. It is the government's position that the entry was made under the doctrine of "hot-pursuit", see U. S. v. Santana 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), and that the entry was therefore legal.

The question of under what circumstances an officer may enter a suspect's home to make a warrantless arrest had been unresolved by the Supreme Court until the Court's decision in Payton v. New York, —— U.S. ——, 100 S.Ct. 1371, 64 L.Ed.2d —— (1980). This court had anticipated that decision in U. S. v. Prescott, 581 F.2d 1343 (9th Cir.1978). There we said:

> We join the District of Columbia Circuit, Dorman v. United States, 1970, 140 U.S.App.D.C. 313, 435 F.2d 385 (in banc), and the Second Circuit, United States v. Reed, 572 F.2d 412, 1978, and hold that, absent exigent circumstances, police who have probable cause to arrest a felony suspect must obtain a warrant before entering a dwelling to carry out the arrest.

Prescott, supra, 581 F.2d at 1350 (emphasis added). The Supreme Court reached a similar conclusion in Payton, stating:

> In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

Payton, supra, at ——, 100 S.Ct. at 1382 (emphasis supplied).

■ In the present case, it appears that the combination of hot pursuit and the possibility that an unapprehended participant in the robbery remained within the house supplied sufficient exigent circumstances to justify the officers in entering the house and searching for the individual identified as "Debbie." The language of Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) is apropos here. In upholding a warrantless entry and search, the Supreme Court observed as follows:

> We agree with the Court of Appeals that neither the entry without warrant to search for the robber, nor the search for him without warrant was invalid. Under the circumstances of this case, 'the exigencies of the situation made that course imperative' . . . The police were informed that an armed robbery had taken place, and that the suspect had entered [the residence] less than five minutes before they reached it. They acted reasonably when they entered the house and began to search for a man of the description they had been given and for weapons which he had used in the robbery or might use against them. The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that Hayden was the only man present and that the police had control of all weapons which could be used against them or to effect an escape.

Id., at 298–99, 87 S.Ct. at 1645. We hold that exigent circumstances justified the

warrantless entry of the house. The evidence seized was in plain view. Consequently, suppression of the evidence was not required.

 Appellants also complain that the pretrial display of surveillance photographs to the two teller eyewitnesses impermissibly tainted the tellers' in-court identifications of Debra Stokes and Eladio Stubblefield. Appellants are correct that the pretrial display of the photographs was unnecessary, since the defendants were already under arrest. However, lack of necessity for the display is only one factor to be considered in determining whether the Government used a photographic display improperly to focus a witness' attention on a particular defendant. *United States v. Crawford*, 576 F.2d 794, 797–98 (9th Cir.), *cert. denied*, 439 U.S. 851, 99 S.Ct. 157, 58 L.Ed.2d 155 (1978). Post-arrest photographic displays are permissible if the procedure used protects the rights of the accused. *United States v. Higginbotham*, 539 F.2d 17, 23 (9th Cir. 1976). The rights of the accused are not jeopardized when, as here, the recollection of an eyewitness is refreshed by the use of photographs of the crime itself. *See United States v. Ervin*, 436 F.2d 1331, 1333–34 (5th Cir.1971). Little possibility of misidentification arises from the use of photographs depicting "the likeness not of some possible suspect in the police files, but of the [persons] who actually committed the robbery." *United States v. Evans*, 484 F.2d 1178, 1186 (2d Cir.1973).

 There is no indication in the record that the Government pressured the tellers to perceive the persons in the surveillance photographs as resembling the defendants in this case. One of the tellers testified that she based her in-court identification of defendant Stokes on her memory of the robbery, not on the surveillance photographs. Moreover, there was no question that the photographs exhibited to the tellers depicted the perpetrators of the robbery. Thus, any resemblance between the persons in the photographs and the defendants not only was not impermissibly suggestive, but, in fact, was highly probative. In the light of all the circumstances, therefore, the use of the photographs in this case did not create "a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). *See United States v. Crawford, supra*, 576 F.2d at 798. Therefore, the weight and credibility of the in-court identifications, subject to whatever doubt the prior use of photographs may have cast on the tellers' testimony, was a question for the jury. *Id.*; *see Manson v. Brathwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

Finally, there was overwhelming independent evidence against the defendants, including the surveillance photographs themselves and the well-corroborated testimony of Lloyd Ransome. Thus, any error in admitting the in-court identification testimony was harmless beyond a reasonable doubt. *See United States v. Faulkner*, 447 F.2d 869, 872 (9th Cir.1971), *ccrt. denied*, 405 U.S. 926, 92 S.Ct. 974, 30 L.Ed.2d 798 (1972). The judgment of the district court is AFFIRMED.