ROBERTSON, Justice,
for the Court:
I.
Today's appellant of a forgery conviction charges impermissible pre-trial taint of a key witness' in-court identification testimony. It appears that the store managed by the witness employed a photographic security system and took defendant’s picture as he presented the check. Prior to trial the witness reviewed the picture to refresh his memory. At trial, over defense objection, he put the finger on the defendant.
The defendant was convicted of forgery and sentenced to seven years imprisonment. We affirm.
II.
A.
On March 9, 1983, Lillian Carte, financial secretary for the First Baptist Church in Long Beach, Mississippi, made out a check on the church’s account for $324.93. That check was payable to Charles Wolfe as monthly payment on property the church purchased from Wolfe. In due course, the check was delivered to Wolfe. That same day Wolfe lost his wallet, containing the unendorsed check. The church promptly stopped payment.
The check turned up eighteen days later when an individual representing himself to be Charles Wolfe cashed it at Gammel’s Shop-Rite, in Gulfport, Mississippi. The date was March 27, 1983. Because it cashes a large number of payroll checks, Gam-mel’s employs a photographic security system called “Double Check” which snaps a picture of the check casher.
The Double Check system employs two lenses. Every time a check is presented, it is stamped with an identification number. A picture is taken of the person in front of the cash register, and, at the same time the camera takes a picture of the check which is placed underneath the camera with any identification, e.g., driver’s license, credit card, presented by the casher. One lens points to the endorser and the other points to the check. The images are placed on a single negative thus precluding the possibility of mix-ups. The store also places the obligatory identification information on the back of the check (e.g., phone number, credit card number, or driver’s license number) as well as a six digit Double Check identification number.
This procedure was followed by Gam-mel’s Shop-Rite for the First Baptist Church/Wolfe check. The bank on which it was drawn, of course, refused payment because of the stop payment order. David Gammel, store owner, remembered cashing the check and identified the man in the *1288 photograph taken by Double Check as the man who cashed the check. He remembered the check because it was in “rough shape” and it had been written two to three weeks before it was cashed. Also, the man presenting the check didn’t have a driver’s license which the store usually requires to cash a check, but since the check was from the church Gammel’s parents attend and it was signed by the vice president of the bank Gammel uses, he cashed it anyway. (The photograph reflects Charles Wolfe’s Sears credit card.)
When he realized the check had been forged, Gammél contacted “Double Check” in New Orleans and had them process the photo that corresponded with the number stamped on the check. When the photo came back, one of the store’s employees recognized the man in the photo as someone who had been in the store before.
Nothing was done for over four months. On July 19 or 20 the man came in again, this time to cash a payroll check made out to Joe George, Jr. Gammel’s mother cashed the check, took the photo and made a note of the Double Check number. The picture of this check and check casher was then requested from Double Check. Although he compared the two pictures, Gam-mel recognized George as the man for whom he had cashed the First Baptist check.
Wayne Payne, a detective with the Gulf-port Police Department, testified that George admitted to him that the photograph alongside the First Baptist check was of him, but that he did not present the check to Gammel’s Shop-Rite, that it must be a mistake.
Marie Holloway, a Shop-Rite employee, said that she had seen George in the store maybe three times a week buying groceries and cashing paychecks for about a year (as of August 8, 1984). She stated that she recalled David Gammel joking with George about having two first names.
B.
On May 18, 1984, George was charged with uttering forgery in an indictment returned by the Harrison County Grand Jury. On August 8, 1984, the case was called for trial in Circuit Court of Harrison County at the conclusion of which the jury returned a verdict of “guilty as charged.” The Circuit Court thereupon sentenced George to a term of seven years in the custody of the Mississippi Department of Corrections. From that conviction and sentence, George presents today’s appeal.
III.
The sole issue on this appeal concerns the in-court identification testimony of prosecution witness David Gammel. George urges that, when at trial Gammel pointed to him and told the jury he was the person who forged the First Baptist check, Gammel’s testimony had been impermissi-bly tainted and should have been excluded. This so-called taint is said to have originated from Gammel’s use of the photographs taken by the Double Check camera.
Check cashing security systems involving the taking of contemporaneous photographs of the presenter have become common in recent years. A sufficiently high percentage of checks cashed will for one reason or another turn out to have been made of rubber or of less valuable substances, so that many businesses such as Gammel’s Shop-Rite have felt the need to resort to some such security system. A photographic record is made at the time the check is cashed so that identification evidence will be available when the case comes to court.
The admissibility of photographs taken under systems like Double Check is not questioned, nor could it be. See State v. Pulphus, 465 A.2d 153 (R.I.1983); Dunford v. State, 614 P.2d 1115 (Okla.Cr.1980); Scalf v. State, 424 N.E.2d 1084 (Ind.App.1981). See also Rule 901(a), Miss.R.Ev., eff. January 1,1986; McCormick, Evidence § 214 p. 672 (1984).
The briefs talk at length of photographic line-ups. The lawyers cite opinions discussing taint of in-court identification testimony originating from a witness’ viewing photographs taken at times and under circumstances wholly unrelated to the offense charged in the indictment. We are told of *1289 the familiar cases of Manson v. Brathwrite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed. 2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Robinson v. State, 473 So.2d 957 (Miss.1985); and York v. State, 413 So.2d 1372 (Miss.1982). These cases are of little help.
Assuming arguendo that Gammel’s in-court identification testimony was enhanced by the photographs, we consider that this was not only permissible, but wholly desirable. What takes this case out of the Manson-Neil analysis is that the photograph was made at the Shop-Rite Store at the time the check was endorsed and negotiated. By analogy, we would only commend an individual who witnessed an event likely to give rise to litigation and who made contemporaneous notes of what he saw in order to preserve accurately his memory. That the notes were reviewed by the witness prior to testifying would seem only to enhance reliability. The only caveat, of course, would be that opposing litigants would be entitled to access to copies of the contemporaneous notes the witness used to refresh his memory. See Rule 612, Miss.R.Ev., effective January 1, 1986.
All David Gammel did was employ a far more reliable process of recording contemporaneously a description of the man who presented the check at his store on March 27, 1983. He would have been foolish not to review that photograph and, as well, the one made later on July 19 or 20, prior to testifying, for such review could only increase the probative value of Gammel’s in-court testimony. We have the testimony that the photograph was made March 27 contemporaneously with the presentation of the check. This was not seriously disputed. What Gammel viewed, then, was a photograph of the man who endorsed and presented the check. This is quite different from having the witness view a picture taken on a wholly other occasion.
The point has been noted in the analogous context of a hidden surveillance camera photographing a bank robbery. In United States v. Stubblefield, 621 F.2d 980 (9th Cir.1980), the defendant complained that allowing the witnesses to see a photograph impermissibly tainted the in-court identifications. The Court of Appeals stated:
The rights of the accused are not jeopardized when, as here, the recollection of an eyewitness is refreshed by the use of photos of the crime itself, [cite omitted] Little possibility of misidentification arises from the use of photographs depicting “the likeness not of some possible suspect in the police files, but of the [persons] who actually committed the robbery.” United States v. Evans, 484 F.2d 1178, 1186 (2d Cir.1973). There was no question that the photographs exhibited to the tellers depicted the perpetrators of the robbery. Thus any resemblance between the persons in the photographs and the defendant not only was not im-permissibly suggestive, but, in fact, was highly probative.
621 F.2d at 983. See also United States v. Brannon, 616 F.2d 413, 416 (9th Cir.1980); United States v. Ervin, 436 F.2d 1331, 1333-34 (5th Cir.1971).
The point has been put well in Sobel, Eye Witness Identification § 5.3(g) (1981). The author writes that the argument that photographs taken by bank surveillance cameras are impermissibly suggestive has been overwhelmingly rejected “since such films provide a memory refreshing device, showing ‘the man who actually committed robbery’ as opposed to the picture ‘of some possible suspect in the police files.’ ”
In the instant case, Gammel testified at some length how the Double Check System operates as well as how it was done on the day in question. He was also able to state that the photograph accurately depicted the scene at the store that day. The photograph was admissible as substantive evidence as to the identity of the check’s casher, even if Gammel himself was unable to identify the defendant. At trial Gammel gave a very positive identification of George as the man who cashed the check. The objection to Gammel having refreshed his memory by reviewing the photograph was correctly overruled.
*1290 The assignment of error is without merit and is denied.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.
GRIFFIN, J., not participating.