**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

MICHAEL EMMETT BECK,
            *Defendant-Appellant.*

No. 03-30470

D.C. No.
CR-02-00432-AJB

OPINION

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted
September 13, 2004—Portland, Oregon

Filed August 10, 2005

Before: J. Clifford Wallace, Ronald M. Gould, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Gould

## COUNSEL

Christopher J. Schatz, Assistant Federal Public Defender, Portland, Oregon, for the defendant-appellant.

Karin J. Immergut, United States Attorney, District of Oregon, and Frank Noonan, Assistant United States Attorney, Portland, Oregon, for the plaintiff-appellee.

## OPINION

GOULD, Circuit Judge:

Michael Beck appeals several rulings of the district court made during his trial for bank robbery pursuant to 18 U.S.C. § 2113(a). The district court denied Beck's pre-trial motions to exclude evidence of photograph identification and in-court eyewitness identification of Beck, and also to prevent Beck's probation officer from giving lay opinion testimony identifying Beck as the person in the bank's surveillance photograph. Beck also appeals the district court's denial of his trial motion to exclude the government from presenting rebuttal testimony of an FBI agent. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1), and we affirm.

## I

On May 1, 2000, a man approached a teller window at the Lloyd Center Tower branch of Key Bank, located in Portland, Oregon. Shantina Green was the teller at the window. The man handed Green a note, and told her that he had a gun and would kill her. The man told Green to give him cash in fifty and one-hundred dollar bills, and not to give him any tracking device. Green said that she did not have fifty or one-hundred dollar bills, and the man told her to give him whatever she had. Green complied and the man walked away. Green then activated the bank's security system, which took photos of the robber as he walked out of the bank.

Three witnesses gave physical descriptions of the robber: (1) Green, the teller; (2) William Zimmerman, a bank customer who had entered the bank after the robber had entered; and (3) Kenneth Grage, another teller working at the bank on the day of the robbery. Green described the robber as a white male, about six feet tall, thin, in his mid-thirties, clean-shaven, with framed prescription glasses and black, curly, shoulder-length hair. Zimmerman described the robber as male, white

or Native American, twenty-five to thirty years old, approximately six feet tall, with full, neatly cut, black hair. Grage described the robber as male, possibly Hispanic or Filipino, in his mid-twenties, about five feet, ten inches tall, with black, wavy, collar-length hair.

On May 23, 2000, Edward Glover, Beck's federal probation officer, was shown the photograph from the bank's surveillance system. Glover said that he believed Beck was the person shown in the photograph. Beck was arrested that same day.

FBI Special Agent Steven Whipple conducted a photographic spread line-up with the three eyewitnesses, Green, Zimmerman, and Grage. Whipple showed each eyewitness a bank surveillance photograph of the robber, and then asked whether the eyewitness could identify the robber from any of the individuals in a six-person photospread. Green selected the person in position number "5" of the photospread as the robber, which was Beck, and said that she was "sure it was him." Zimmerman also identified the man in position number "5" of the photospread as the bank robber. Grage recognized the robber from the surveillance photograph, but selected the person in position number "2" as the man he thought was the bank robber. The person Grage identified was not Beck.

On October 16, 2002, the grand jury for the District of Oregon returned an indictment charging Beck with one count of bank robbery, in violation of 18 U.S.C. § 2113(a). Beck was arraigned on October 24, 2002.

Beck filed two motions in limine that are relevant to the issues raised on this appeal: a motion to exclude eyewitness identification testimony and a motion to exclude testimony by Glover, Beck's federal probation officer. The district court conducted an evidentiary hearing to resolve these motions at which Agent Whipple testified that he had used computer software to generate the photospread. Whipple limited the

scope of the search to "a white male with glasses and black hair." Whipple narrowed the results to six individuals, based on hair color, glasses, hair length, and a clean-shaven face.

Glover testified at the evidentiary hearing that he had four contacts with Beck in the course of his work as Beck's federal probation officer: (1) February 9, 2000, for thirty minutes; (2) February 28, 2000, for ten to twenty minutes; (3) March 21, 2000, for twenty to twenty-five minutes; (4) April 4, 2000, for ten to fifteen minutes.

The district court denied both of Beck's motions in limine. Beck's first jury trial began on April 15, 2003. The district court declared a mistrial on April 17, 2003, after the district court concluded that the jury was deadlocked. Beck's second jury trial began on July 22, 2003. The second jury returned a guilty verdict the next day. Beck was given a 102-month sentence and three years of supervised release.

## II

We must decide whether the photospread, and the procedure of showing the surveillance photograph to the eyewitness before the photospread, were unduly suggestive. We also must assess the extent of prior contact between a witness and a defendant sufficient to render the witness's lay opinion admissible under Federal Rule of Evidence 701, in order to decide whether probation officer Glover was properly permitted to give lay opinion testimony. Finally, we must decide whether the district court abused its discretion in admitting Special Agent Whipple's rebuttal testimony.

## A

[1] Beck contends that the district court should have excluded Green's testimony regarding her out-of-court identification of Beck in the photospread because the composition

of the photospread was improperly suggestive.[1] Suppression of such evidence is appropriate only where the photospread was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *United States v. Carbajal*, 956 F.2d 924, 929 (9th Cir. 1992) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)).

**[2]** The photospread in question was not impermissibly suggestive. A review of the photospread shows that all six of the pictures are of Caucasian males in the same age range, with similar skin, eye, and hair coloring. Each photo depicts a subject wearing distinctive glasses. Four of the six photos show men with similar length hair, with two having somewhat shorter hair. All except for one are clean-shaven. This photospread was not so impermissibly suggestive as to create a substantial likelihood of misidentification. *See Carbajal*, 956 F.2d at 929 (holding that a photospread was not impermissibly suggestive where all six of the pictures in the photospread "were of Hispanic males in the same age range, with similar skin, eye, hair coloring," and hair length, and each had a moustache).[2]

**[3]** Beck further contends that the district court should have excluded Green's in-court testimony because Agent Whipple improperly showed Green the bank surveillance photo before showing her the photospread. We have held that "[p]ost-arrest photographic displays are permissible if the procedure used

---

[1]We review de novo the issue of whether out-of-court identification procedures were so suggestive as to violate a defendant's due process rights. *United States v. Nash*, 946 F.2d 679, 681 (9th Cir. 1991).

[2]Beck's arguments citing social science research about eyewitness identification do not persuade us in the precise context of this case. Although such research may be relevant in deciding what constitutes an impermissibly suggestive procedure, that research does not convince us that the particular identification procedures used in this case create a substantial likelihood of misidentification. The trial court did not abuse its discretion in this case by admitting the identifications and allowing Beck to put on his expert evidence before the jury, rather than excluding both from trial.

protects the rights of the accused." *United States v. Stubble-field*, 621 F.2d 980, 983 (9th Cir. 1980). Our precedent also establishes that "[t]he rights of the accused are not jeopardized when, as here, the recollection of an eyewitness is refreshed by the use of photographs of the crime itself." *Id.*

We reject Beck's contention because the surveillance photograph that Agent Whipple showed to Green depicted the actual robber as he left the bank. *See id.* (observing that "[l]ittle possibility of misidentification arises from the use of photographs depicting the likeness not of some possible suspect in the police files, but of the (persons) who actually committed the robbery") (internal quotation marks omitted). In *Stubblefield* we held that the rights of the accused were not jeopardized because the government had not coerced the witnesses to testify in a particular way, because the witness had testified that her in-court identification was based on her memory of the crime and not on the surveillance photographs, and because the photographs shown to the witnesses were those of the actual robber. *Id.* Beck's rights were similarly not jeopardized.

**[4]** We conclude that neither the photospread standing alone nor Agent Whipple's procedure of showing the eyewitnesses the surveillance photo of the robber before each witness scrutinized the photospread was impermissibly suggestive. The photospread itself was assembled with a reasonable, computer-assisted method, and displayed suspects sharing sufficiently relevant characteristics so that the display did not create a substantial risk of misidentification. Moreover, the display did not become impermissibly suggestive by virtue of the prior disclosure to witnesses of the surveillance photo of the actual bank robber; to the contrary, under our precedent the procedure adopted permissibly protected the rights of the accused.

## B

Beck contends that the district court erred in admitting the lay opinion testimony of his federal probation officer, Edward Glover. At Beck's second jury trial, Beck objected to the government's introduction of Glover's testimony under Federal Rules of Evidence 403 and 701.[3] The district court overruled Beck's objections, and directed Glover to testify but to conceal from the jury his status as Beck's probation officer. Glover testified that he had a "professional relationship" with Beck, and that he believed Beck was the person shown in the bank surveillance photo.

Federal Rule of Evidence 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Beck argues that the district court should have excluded Glover's testimony because testimony from a law enforcement officer may be prejudicial. *See, e.g.*, *United States v. Butcher*, 557 F.2d 666, 670 (9th Cir. 1977). We reject Beck's argument because Glover merely testified that he had a "professional relationship" with Beck, and not that he was a law enforcement officer. *Cf. United States v. Henderson*, 241 F.3d 638, 651 (9th Cir. 2001) (observing that "there is no per se rule against [officer testimony identifying a defendant in surveillance photographs]"). We hold that the district court did not abuse its discretion in admitting Glover's lay testimony and properly balanced competing considerations of evidentiary need and danger of unfair prejudice by allowing Glover to testify and by directing Glover to conceal his status as Beck's probation officer.

---

[3]We review for an abuse of discretion the district court's resolution of Beck's Rule 403 objection. *United States v. Gonzalez-Torres*, 309 F.3d 594, 601 (9th Cir. 2002). We review for an abuse of discretion the district court's decision to admit lay opinion testimony. *United States v. Matsumaru*, 244 F.3d 1092, 1101 (9th Cir. 2001).

**[5]** Federal Rule of Evidence 701 provides that a non-expert witness's testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, [and] (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." We have held that a lay witness may give an opinion regarding the identity of a person depicted in a photograph if that witness has had "sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful," *United States v. Henderson*, 68 F.3d 323, 326 (9th Cir. 1995), though we have not provided clear guidance as to the extent of contact sufficient to render lay opinion testimony rationally based and helpful to the jury.[4] Several of our sister circuits, however, have artic-

---

[4]We have taken a case-by-case approach in deciding whether a lay opinion witness had sufficient contact with the defendant to render the witness's testimony helpful within the meaning of Rule 701:

In *Henderson*, we held that there was no abuse of discretion when a lay witness testified to the defendant's identity in surveillance photographs and had known the defendant for more than four years, and had seen him more than 100 times. 241 F.3d at 650-51.

In *United States v. Holmes*, 229 F.3d 782, 788-89 (9th Cir. 2000), we held that there was no abuse of discretion where a lay witness had met the defendant six times for at least thirty minutes each time.

In *United States v. LaPierre*, 998 F.2d 1460, 1465 (9th Cir. 1993), we held that the district court erred in admitting the lay opinion identification testimony of a police officer who identified the defendant in robbery surveillance photographs. The police officer had never met the defendant before the robbery; his knowledge was based on review of photographs of the defendant and the description of witnesses who knew the defendant. *Id.* We reasoned that the police officer's level of familiarity with the defendant's appearance fell short of that required by Ninth Circuit case law and Rule 701's requirement of helpfulness. *Id.*

In *United States v. Brannon*, 616 F.2d 413 (9th Cir. 1980), we held that the district court did not abuse its discretion in admitting the testimony of four lay witnesses who identified the defendant as the person depicted in robbery surveillance photographs. Two of the witnesses had not met the defendant before the robbery. *Id.* at 417. We did not address explicitly whether and why the testimony was "rationally based" or "helpful."

ulated standards by which to assess whether a lay witness's testimony is rationally based and helpful to a jury. *See, e.g.*, *United States v. Pierce*, 136 F.3d 770, 774-75 (11th Cir. 1998); *United States v. Jackman*, 48 F.3d 1, 4-5 (1st Cir. 1995); *United States v. Allen*, 787 F.2d 933, 935-36 (4th Cir. 1986), *vacated on other grounds by* 479 U.S. 1077 (1987); *United States v. Jackson*, 688 F.2d 1121, 1124-26 (7th Cir. 1982).

**[6]** We hold that a lay witness's testimony is rationally based within the meaning of Rule 701 where it is "based upon personal observation and recollection of concrete facts." *Allen*, 787 F.2d at 935 (internal quotation marks omitted). As have the Fourth and Seventh Circuits, we conclude that the extent of a witness's opportunity to observe the defendant goes to the weight of the testimony, not to its admissibility. *Id.* at 936; *Jackson*, 688 F.2d at 1125; *see also* Fed. R. Evid. 701 advisory committee's note (indicating that direct and cross-examination of a lay witness testifying as to his or her opinion is relied upon to verify the accuracy of the testimony).

**[7]** Our precedent provides that lay witness testimony is permissible where the witness has had "sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful." *Henderson*, 241 F.3d at 650. In accord

---

In *Butcher*, we held admissible the lay opinion identification testimony of two police officers and a probation officer who identified the defendant as the culprit depicted in bank surveillance photographs. 557 F.2d at 670. The witnesses had varying levels of prior contacts with the defendant: the first officer had known the defendant for one and a half years and had met the defendant about three times for a total of two and a half hours; the second officer had known the defendant for five months and had observed the defendant for between two and three hours; the probation officer had known the defendant for just over one year, and had met the defendant about twelve times with each meeting lasting between fifteen and thirty minutes. *Id.* at 667 n.3.

with the decisions of our sister circuits, we hold that whether a lay opinion is helpful depends on a totality of the circumstances including the witness's "[f]amiliarity with the defendant's appearance at the time the crime was committed," *Jackman*, 48 F.3d at 5, the witness's familiarity with the defendant's customary manner of dress, insofar as such information related to the clothing of the person depicted in the surveillance photograph, *see Pierce*, 136 F.3d at 774, whether the defendant disguised his or her appearance during the offense or altered his or her appearance before trial, *id.* at 775, and whether the witness knew the defendant over time and in a variety of circumstances, such that the witness's lay identification testimony offered to the jury "a perspective it could not acquire in its limited exposure" to the defendant, *Allen*, 787 F.2d at 936.

The absence of any single factor will not render testimony inadmissible because cross-examination exists to highlight potential weaknesses in lay opinion testimony. *See, e.g.*, *Jackman*, 48 F.3d at 5. Also, the governing standard under Federal Rule of Evidence 701(b) assesses whether the lay witness identification testimony is potentially "helpful to . . . the determination of a fact in issue," in the totality of the circumstances, *see Pierce*, 136 F.3d at 774-75 (holding that the admissibility of lay witness identification testimony "turns on a number of factors"), and this assessment does not hinge on the presence of any particular factor.

**[8]** Here, Glover had met with Beck four times in a two-month period, for a total of more than seventy minutes. Glover had sufficient contacts with Beck so that Glover's perception of the person in the bank surveillance photo was helpful to a clear understanding of the determination of a fact in issue, that is, the identity of the person in the bank surveillance photo. We hold that the district court did not err in determining that Glover's lay opinion identification testimony was rationally based and helpful to the trier of fact, and the

district court did not abuse its discretion in admitting Glover's testimony.[5]

## C

Beck contends that the district court erred in admitting the government's rebuttal testimony from Agent Whipple regarding the procedures Whipple used in creating the photospread.[6] There is no dispute that Beck introduced at trial Dr. Daniel Reisberg's expert testimony concerning alleged deficiencies in the photospread regarding its methodology and use. Beck "opened the door" to the government's rebuttal testimony by raising, in Dr. Reisberg's testimony, the specific issue of whether the methodology used by Whipple made the photospread inappropriately suggestive. We hold that the district court did not abuse its discretion in admitting rebuttal testimony from Agent Whipple.

---

[5]At the hearing on the motion in limine, Glover stated that he knew that someone thought that Beck was depicted in the surveillance photograph before the photograph was shown to him. However, Glover stated at trial that he had viewed the photograph and formed an opinion concerning its depiction of Beck before he was advised that Beck had been identified in the photograph by another person. Beck contends that his Sixth Amendment right to cross examination was violated by the combination of Glover's change of testimony at trial, compared to his prior testimony at the in limine evidentiary hearing, and the district court's procedure of concealing from the jury Glover's status as Beck's probation officer. Alleged violations of the Sixth Amendment's Confrontation Clause are reviewed de novo. *Lilly v. Virginia*, 527 U.S. 116, 136-37 (1999). We reject Beck's constitutional argument because Beck elicited cross-examination testimony from Glover acknowledging that Glover's testimony at trial differed from that at the evidentiary hearing; this issue goes to weight of testimony and does not amount to a Sixth Amendment Confrontation Clause violation.

[6]We review for an abuse of discretion a district court's admission of rebuttal evidence. *United States v. Antonakeas*, 255 F.3d 714, 724 (9th Cir. 2001).

## III

The district court did not err in admitting the in-court identification testimony of Green because the pretrial identification procedures were not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Neither did the district court abuse its discretion in admitting the lay opinion identification testimony of Glover because Glover's testimony was rationally based and helpful to the determination of a fact in issue. Likewise, the district court did not abuse its discretion in allowing Agent Whipple's rebuttal testimony to rehabilitate the methodology of the FBI's photospread procedures.[7]

[9] Although Beck did not initially raise the issue on appeal, the district court sentenced Beck under the premise that the United States Sentencing Guidelines were mandatory. We now know the Guidelines are advisory. *United States v. Booker*, 125 S. Ct. 738, 755-56 (2005). Pursuant to *United States v. Ameline*, 409 F.3d 1073, 1084 (9th Cir. 2005) (en banc), we ordered the parties to file supplemental briefs. Beck indicated that he wishes to pursue a remand. *Id.* ("If an eligible party seeks resentencing under *Booker/Fanfan*, we will then engage in the plain error analysis described in this opinion."); *see also United States v. Moreno-Hernandez*, No. 03-30387, 2005 WL 1560269, at *9 (9th Cir. July 5, 2005). Because the record does not indicate what sentence the district court would have imposed had the Guidelines been employed in an advisory capacity, we must remand this case to the district court. *Moreno-Hernandez*, 2005 WL 1560269, at *9; *United States v. Barken*, No. 03-50441, 2005 WL 1501496, at *6 (9th Cir. June 27, 2005).

Conviction **AFFIRMED**; sentence **REMANDED.**

---

[7]Because the district court did not err on any of the grounds asserted by Beck, we also reject Beck's contention that the cumulative effect of the alleged errors of the district court denied him a fair trial.