NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 4 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DALE LAWRENCE HIPES,

Defendant - Appellant.

No. 23-1513

D.C. No.
2:21-cr-00199-MTL-1

MEMORANDUM*

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DALE LAWRENCE HIPES,

Defendant - Appellant.

No. 23-1805

D.C. No.
2:21-cr-00199-MTL-1

Appeal from the United States District Court
for the District of Arizona
Michael T. Liburdi, District Judge, Presiding

Submitted March 25, 2025**
Phoenix, Arizona

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before: GRABER and BENNETT, Circuit Judges, and TUNHEIM, District Judge.[***]

This case arises from a failed deal to procure 3M masks for the State of Texas at the start of the COVID-19 pandemic. Defendant Dale Hipes appeals his convictions on four counts of wire fraud under 18 U.S.C. § 1343 and three counts of money laundering under 18 U.S.C. § 1957(a) following a jury trial, as well as the denial of his motion for a new trial. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. Hipes argues that the evidence at trial proved only a "scheme to *deceive*, not a scheme to *defraud*" as required by 18 U.S.C. § 1343, for two reasons: the evidence was insufficient to show (1) that the object of the scheme was the deprivation of money or property, and (2) that the misrepresentations of the scheme went to the "nature of the bargain." Hipes preserved this challenge in his Rule 29 motion for a judgment of acquittal, in which he contested the sufficiency of the evidence "with regards to the proof of the intent to defraud," so we review de novo. *See United States v. Gagarin*, 950 F.3d 596, 602 (9th Cir. 2020). We "view[] the evidence in the light most favorable to the prosecution" and disturb the jury's verdict only if "all rational fact finders would have to conclude that the evidence of guilt

---

[***] The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, sitting by designation.

2                                                              23-1513

fails to establish every element of the crime beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158, 1164–65 (9th Cir. 2010) (en banc).

The wire fraud statute prohibits "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1343. The Supreme Court has held that the "money or property" language limits the statute's reach to the deprivation of "traditional property interests." *Ciminelli v. United States*, 598 U.S. 306, 316 (2023); *see id.* at 312 (quoting *Cleveland v. United States*, 531 U.S. 12, 19, 24 (2000)). Hipes contends the evidence "showed at most a scheme to deprive [James] Kwak and [Kim] Shafer of 'the ethereal right to accurate information'—specifically, information regarding [Hipes's company] being a 3M distributor and the purchase money being deposited into an escrow account." But Hipes does not dispute that Kwak and Shafer were acting as agents of Texas in "trying to buy [3M] Model 1860 masks for the State," with $20 million in "money fronted by [Shafer's] business partner John Paul DeJoria . . . to help the State"—$16.65 million of which was later transferred to Kwak to transfer to Hipes. Viewed in the light most favorable to the prosecution, the same evidence that Hipes acknowledges showed a scheme to deprive Kwak and Shafer of accurate information sufficed to show a scheme to deprive Texas of money or property.

In *United States v. Milheiser*, 98 F.4th 935 (9th Cir. 2024), we held "that not just any lie that secures a sale constitutes fraud, and that the lie must instead go to the nature of the bargain," or "essential aspects of the transaction." *Id.* at 944. These include "price, quality, or advantages of the transaction." *Id.* (quoting *United States v. Tarallo*, 380 F.3d 1174, 1183 (9th Cir. 2004)). Hipes argues that his wire fraud convictions were not supported by evidence that he, for instance, "promised to deliver 3M Model 1860 masks while secretly intending to deliver inferior imitations." But Hipes's misrepresentations about his 3M connection and escrow account did concern "the advantages of [his] offer." *Tarallo*, 380 F.3d at 1183 (quoting *United States v. Leveque*, 283 F.3d 1098, 1104 (9th Cir. 2002)). "Inherent in [Texas's] decision to pay for [Hipes]" to distribute 3M masks "was the assumption that [Hipes] was qualified" to distribute such masks—which included that he was an authorized 3M distributor and that he would hold the purchase money in an escrow account. *Leveque*, 283 F.3d at 1104–05. Thus, Hipes's "misrepresentations to the contrary . . . undermined the very basis of the bargain with [Texas]." *Id.* Accordingly, the evidence sufficed to prove that Hipes's scheme involved lies going to the nature of the bargain.

2.      Hipes next argues that the verdict rests on the government's "any lie that secures a sale" theory of fraud, which we rejected as overbroad and legally invalid in *Milheiser*. *See* 98 F.4th at 944. This challenge is similar to the sufficiency

challenge discussed above, although it may be "best understood . . . as a claim that the district court applied the wrong legal standard in assessing his guilt" in light of intervening precedent. *United States v. Johnson*, 979 F.3d 632, 636 (9th Cir. 2020). Thus, "even if 'a solid wall of circuit authority' would have rendered any objection futile at the time of trial[,] . . . [Hipes]'s failure to object at trial to the district court's omission of the ['nature of the bargain' requirement] triggers review under the plain-error standard of Rule 52(b)." *Id.* (citation omitted) (quoting *United States v. Keys*, 133 F.3d 1282, 1284, 1286–87 (9th Cir. 1998) (en banc)).

The district court did not plainly err in allowing the government to proceed on its theory of fraud without any curative instruction to the jury.[1] The government's theory tied Hipes's misrepresentations to two of Texas's requirements for mask purchases and was therefore not overbroad like the theory rejected in *Milheiser*.

3.    Hipes also argues that (1) the district court provided a legally insufficient instruction on the intent element for wire fraud and (2) the district court erred in denying his request for a supplemental instruction. Before *United States v. Miller*, 953 F.3d 1095 (9th Cir. 2020), the Ninth Circuit's model instruction defined the intent required for wire fraud as an "intent to 'deceive *or* cheat.'" *Id.* at 1100. After *Miller* held that "wire fraud requires the intent to deceive *and* cheat—in other

---

[1] Hipes points out that the materiality instruction in his case was identical to the one found insufficiently curative in *Milheiser*, 98 F.4th at 945, but there was no error to "remedy" here with a jury instruction.

words, to deprive the victim of money or property by means of deception," *id.* at 1103—the model instruction swapped out "or" for "and." Hipes contends that the post-*Miller* modification did not "go[] far enough" to make clear that wire fraud requires the intent to deprive the victim of money or property through lies. We review de novo "[w]hether the instructions actually misstated an element of the crime." *United States v. McKittrick*, 142 F.3d 1170, 1176 (9th Cir. 1998). "If the instructions 'fairly and adequately cover the issues presented,'" we review their precise formulation for abuse of discretion. *United States v. Peppers*, 697 F.3d 1217, 1220 (9th Cir. 2012) (per curiam) (quoting *United States v. Powell*, 955 F.2d 1206, 1210 (9th Cir. 1992)).

Hipes's attack on the legal sufficiency of the 2021 model instruction on the intent element rests on *Ciminelli v. United States*, 598 U.S. 306 (2023), decided a month after his trial. A change in the model instruction on the "scheme to defraud" resulted.[2] But the post-*Ciminelli* modification to the scheme instruction does not establish a fatal deficiency of the 2021 model intent instruction. The intent instruction here was legally sufficient.

The district court also did not abuse its discretion in denying Hipes's request to supplement the 2021 model instructions. The district court explained that it saw

---

[2] The language of the scheme instruction was updated from "a scheme or plan to defraud, or a scheme or plan for obtaining money or property" to "a scheme or plan to defraud for the purpose of obtaining money or property."

no need for Hipes's proposed addition when "the elements of . . . [Hipes's] suggestion [were] in the model instruction already."

4.     Next, Hipes contends that the evidence was insufficient to show that wires following Texas's cancellation of the contract—the June 18, 2020, return of $12 million of the purchase money (Count 3) and the July 15, 2020, email acknowledging the remaining $4.6 million still owed (Count 4)—were part of his "scheme to defraud."  He makes two closely related arguments: the evidence was insufficient to show that the two wires were sent (1) before the completion of Hipes's scheme and (2) in furtherance of Hipes's scheme.  As with the sufficiency challenge discussed above, de novo review applies here.  *See Gagarin*, 950 F.3d at 602.

Wires "designed to avoid detection or responsibility for a fraudulent scheme" fall within the wire fraud statute "when they are sent before the scheme is completed."  *United States v. Tanke*, 743 F.3d 1296, 1305 (9th Cir. 2014).[3]  A scheme can continue "after [defendants] obtain[] the victims' money," such as when later wires are "designed to lull the victims into a false sense of security in order to postpone their ultimate complaint to authorities."  *Id.* at 1302 (citing *United States v. Sampson*, 371 U.S. 75, 78–79 (1962)).

---

[3] "'Because the bank, mail, and wire fraud statutes all use highly similar language,' we reference caselaw on federal bank, mail, and wire fraud interchangeably."  *Milheiser*, 98 F.4th at 942 n.4 (quoting *Miller*, 953 F.3d at 1102 n.7).

Hipes asserts that his scheme "reached fruition" on May 26, 2020, when Kwak wired his company the purchase money. This phrase comes from a case defining "fruition" as the moment when the intended recipients of "the money had received it irrevocably"—the defendants cashed out "the money[] it was intended they should receive under the scheme." *Kann v. United States*, 323 U.S. 88, 94 (1944). That was not so here. Rather than cashing out the full $16.65 million, Hipes returned $12 million of it and sent an email promising the rest, in what a reasonable factfinder could construe as attempts to appease Kwak and Shafer so that Hipes could keep the rest long enough to spend it on himself. Bookending the July 15 email underlying Count 4—the latest wire for which he was convicted—was his use of almost $2 million of the remaining money to buy a new house and additional withdrawals to buy recreational vehicles. The evidence was sufficient to show that Hipes's scheme was not yet complete at the time he sent the wire described in Count 4.

Though wires can further a scheme by lulling victims into postponing their complaints to the authorities, wires cannot be said to further the scheme if they "increased the probability that respondent would be detected and apprehended." *United States v. Maze*, 414 U.S. 395, 403 (1974). Hipes argues that this was the case with both post-cancellation wires, which alarmed Kwak and Shafer and prompted their repeated demands to Hipes for the outstanding money. But this evidence establishes that Texas's agents did keep the issue between themselves and Hipes for

some time, while they were duped into believing that Hipes would continue returning the funds on his own, and they postponed contacting the authorities as a result. The evidence was therefore sufficient to show that the post-cancellation wires were sent in furtherance of Hipes's scheme.

5.     Hipes argues that the district court erred in excluding as hearsay emails to witness Wendy Anderson from purported mask sellers and brokers. He sought to introduce the emails during Anderson's testimony, as evidence of his efforts to procure replacement masks for Texas. Though the emails could have been admissible as non-hearsay for the purpose Hipes advances on appeal, he "failed to identify an applicable non-hearsay ground" for the emails' admission before the district court. *United States v. Alahmedalabdaloklah*, 94 F.4th 782, 836 (9th Cir. 2024). The Federal Rules of Evidence exempt from hearsay "statement[s] of the *declarant's* then-existing state of mind"—here, the email senders. Fed. R. Evid. 803(3) (emphasis added). Even if Hipes had preserved his challenges as to all four email exhibits, the district court did not abuse its discretion in sustaining the government's hearsay objections over Hipes's arguments that they were offered to prove *Anderson's* "state of mind."

6.     Hipes contends that the district court erred in sustaining a hearsay objection that prevented witness Nancy Countryman from testifying that she had overheard Hipes being "asked" to write the email underlying Count 4. At trial,

however, Hipes failed to make an offer of proof for Countryman's objected-to testimony. Without an offer of proof in the record below "to show the substance of the would-be evidence and the purpose of which a party sought to introduce it," we are "unable to review th[e] issue" of its exclusion. *Pau v. Yosemite Park & Curry Co.*, 928 F.2d 880, 887 (9th Cir. 1991); *see also United States v. Morlan*, 756 F.2d 1442, 1447 (9th Cir. 1985).

7.     Finally, Hipes contends that the cumulative effect of the trial errors deprived him of a fair trial. Because Hipes has not identified any such errors, there is no cumulative error warranting reversal. *See United States v. Beck*, 418 F.3d 1008, 1016 n.7 (9th Cir. 2005).

**AFFIRMED.**