SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State v. Damian Sanchez (A-60-19) (084104)**

**Argued January 5, 2021 -- Decided July 22, 2021**

**PATTERSON, J., writing for the Court.**

The Court considers the admissibility of the lay opinion testimony of defendant Damian Sanchez's parole officer, Cheryl Annese, that defendant was the individual depicted in a photograph derived from surveillance video.

In the course of a homicide investigation, the Camden County Prosecutor's Office circulated a flyer entitled "Attempt to Locate," which stated that a "red/burgundy" Buick Century was "possibly used" in a homicide. The flyer included a still photo derived from surveillance video. In the photograph, the driver is not seen, but the faces of a male passenger in the right front seat and a male passenger in the right back seat are visible.

In response to the flyer, Annese contacted the detective leading the investigation. She identified the front-seat passenger depicted in the photograph as defendant, a parolee whom she supervised. Annese stated that she had met with defendant at least twice a month in the fifteen months since he was released after serving a term of incarceration for aggravated manslaughter. She also told the detective that approximately a week after the homicide and robbery identified in the flyer, defendant had informed her that he had "probably dropped" his phone and had changed his telephone number. A search of a suspect's cellphone revealed text messages exchanged with defendant. A grand jury indicted defendant for felony murder and armed robbery, among other offenses.

Defendant filed a pretrial motion to exclude Annese's testimony. The trial court ruled that her testimony was inadmissible as lay opinion testimony under N.J.R.E. 701. It found that Annese's testimony did not satisfy the rule's requirement that testimony be based on the perception of the witness because Annese did not witness the homicide or robbery, see defendant in the Buick, or have "firsthand" knowledge that defendant was in the Buick as it left the crime scene. The trial court also found that the evidence did not satisfy the requirement that the testimony assist the jury under N.J.R.E. 701. And the trial court held that the testimony should be excluded under N.J.R.E. 403.

The Appellate Division reversed the trial court's determination and remanded the matter. The Court granted defendant's motion for leave to appeal. 241 N.J. 383 (2020).

1

**HELD:** Annese's lay opinion testimony is rationally based on the witness's perception and therefore satisfies the first prong of N.J.R.E. 701. Based on Annese's extensive contacts with defendant, the absence of any other identification testimony, and the quality of the surveillance photograph, the testimony meets the second requirement of N.J.R.E. 701 because it will assist the jury in determining a fact at issue in defendant's trial. Sanitized to avoid disclosure of defendant's status as a parolee at the time of his alleged offense, Annese's lay opinion testimony will not be so prejudicial that its probative value is substantially outweighed by the risk of undue prejudice, and that testimony should not be excluded under N.J.R.E. 403. The Court concurs with the Appellate Division that the trial court abused its discretion when it barred Annese's lay opinion testimony.

1. N.J.R.E. 701 was adopted to ensure that lay opinion is based on an adequate foundation. As amended in 2019, the rule provides that lay opinion testimony "may be admitted if it: (a) is rationally based on the witness' perception; and (b) will assist in understanding the witness' testimony or determining a fact in issue." N.J.R.E. 701. The rule thus imposes two distinct requirements for the admission of lay opinion testimony. (pp. 12-13)

2. In order for lay opinion testimony to satisfy the first component of N.J.R.E. 701, the witness must testify based on knowledge personally acquired through the witness's own senses, rather than on the hearsay statements of others. The witness need not have witnessed the crime or been present when the photograph was made to offer admissible testimony. The trial court erred when it found that Annese's testimony would fall short of N.J.R.E. 701's first requirement because she did not witness the shooting, see defendant in the Buick, or possess "firsthand" knowledge that defendant was in the Buick. N.J.R.E. 701's "perception" prong imposes no such requirement. Annese became familiar with defendant's appearance by meeting with him on more than thirty occasions during his period of parole supervision. Her identification of defendant as the front-seat passenger in the surveillance photograph was "rationally based on [her] perception," as N.J.R.E. 701 requires. The State satisfied the first prong of N.J.R.E. 701. (pp. 13-17)

3. N.J.R.E. 701's second prong requires that lay opinion testimony will assist the jury "in understanding the witness' testimony or determining a fact in issue." N.J.R.E. 701(b). Such testimony must assist the trier of fact either by helping to explain the witness's testimony or by shedding light on the determination of a disputed factual issue. A witness may not offer lay opinion on a matter as to which the jury is as competent as the witness to form a conclusion. In State v. Lazo, the Court noted considerations identified by federal appellate courts deciding whether lay opinion testimony will assist the jury, as required by Fed. R. Evid. 701. 209 N.J. 9, 22-24 (2012). The Court again distills from federal cases factors that inform a trial court's determination whether lay opinion testimony will assist the jury. (pp. 17-18)

2

4. First, the nature, duration, and timing of the witness's contacts with the defendant are important considerations. Second, if there has been a change in the defendant's appearance since the offense at issue, law enforcement lay opinion identifying the defendant may be deemed helpful to the jury. Third, law enforcement lay opinion identifying a defendant in a photograph or video recording should be used only if no other adequate identification testimony is available to the prosecution. Fourth, the quality of the photograph or video recording at issue may be a relevant consideration. If the photograph or video recording is so clear that the jury is as capable as any witness of determining whether the defendant appears in it, that factor may weigh against a finding that lay opinion evidence will assist the jury. And if the image is of such low quality that no witness could identify the individual who appears in it, lay opinion testimony will not assist the jury, and may be highly prejudicial. Those four factors are not exclusive; other considerations may be relevant to whether lay opinion testimony will assist the jury in a given case. Moreover, no single factor is dispositive. (pp. 18-23)

5. Here, Annese's contacts with defendant were more than sufficient to enable her to identify him in the surveillance photo more accurately than a jury could. Accordingly, the witness's contacts with the defendant favor a determination that her testimony would assist the jury. Because this case has yet to be tried, it is unclear whether a change in defendant's appearance between the date of the surveillance photograph and the date of trial is a relevant consideration. Accordingly, this second factor does not support or undermine a finding that N.J.R.E. 701's second prong is satisfied in this case. Third, Annese's testimony that defendant was the front-seat passenger in the surveillance photograph would provide the State's only identification testimony regarding defendant. That factor favors a holding that her lay opinion testimony would assist the jury. Finally, the quality of the photograph favors the admission of Annese's testimony. The photo is neither so blurry that the subject's features are indistinguishable, nor so clear that jurors unacquainted with defendant could determine as accurately as Annese whether the Buick's front-seat passenger was defendant. The Court concludes that Annese's lay opinion identification would "assist in understanding the witness' testimony or determining a fact in issue." N.J.R.E. 701(b). (pp. 23-25)

6. N.J.R.E. 403(a) bars otherwise admissible evidence if its "probative value is substantially outweighed by the risk of . . . [u]ndue prejudice." It would be highly prejudicial to defendant if the jury learned that defendant was on parole after serving a term of incarceration for aggravated manslaughter. The probative value of any such testimony would be substantially outweighed by its prejudicial effect, and N.J.R.E. 403 would thus bar the evidence. Such prejudice, however, can be addressed by sanitizing the testimony, as the Eighth and Ninth Circuits have found. (pp. 25-26)

7. Here, the trial court should direct that Annese refrain from revealing that she is a parole officer or identifying herself as a law enforcement officer in her testimony on direct examination. Annese should explain her familiarity with defendant by stating that

3

she and defendant had a professional relationship that required them to meet at least twice a month for fifteen months prior to the date on which she identified him in the surveillance photograph and providing other neutral relevant facts regarding the meetings.  As in other settings in which testimony is sanitized to limit its prejudicial effect, defendant may be required to make a strategic decision about the scope of cross-examination, but the potential necessity of such a tactical decision does not render Annese's testimony inadmissible, and it does not implicate defendant's confrontation rights.  The Court provides guidance regarding the presentation of Annese's testimony and notes that, if Annese testifies for the State, defendant may offer lay opinion testimony to counter her identification.  When sanitized as described, Annese's lay opinion testimony identifying defendant as the individual in the surveillance photograph is admissible, and the trial court therefore abused its discretion when it excluded that testimony.  (pp. 26-28)

**AFFIRMED and REMANDED to the trial court.**

**JUSTICE LaVECCHIA, dissenting,** would reverse and remand, rather than conclude at this time that the proffered testimony must be admitted.  In the dissent's view, it is necessary in circumstances such as these that N.J.R.E. 701's perception and helpfulness requirements relate to each other -- the lay opinion identification must be helpful to the jury <u>because of</u> the perception of the witness.  Usually, the dissent writes, that connection takes the form of the witness possessing sufficiently relevant familiarity with the defendant that the jury cannot also possess, such as knowledge of a change in the defendant's appearance; the dissent would leave determination of whether such a change has occurred to the trial court as the trial approaches.  The dissent expresses concern with the suggestion that the unavailability of witnesses other than law enforcement officers weighs in favor of admitting testimony under N.J.R.E. 701, noting that inadmissible lay opinion testimony should not be rendered admissible because one side or the other cannot present identification testimony.  Finally, the dissent is of the view that focus on the quality of the photograph undercuts the familiarity requirement and may create a challenge for trial judges seeking guideposts from case law.

**CHIEF JUSTICE RABNER and JUSTICES FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE PATTERSON's opinion.  JUSTICE LaVECCHIA filed a dissent, in which JUSTICE ALBIN joins.**

4

State of New Jersey,

Plaintiff-Respondent,

v.

Damian Sanchez,

Defendant-Appellant.

On appeal from the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| January 5, 2021 | July 22, 2021 |

Robert C. Wolf argued the cause for appellant (The Wolf
Law Firm, attorneys; Robert C. Wolf, on the briefs).

Linda A. Shashoua, Special Deputy Attorney
General/Acting Assistant Prosecutor, argued the cause for
respondent (Jill S. Mayer, Acting Camden County
Prosecutor, attorney; Linda A. Shashoua, of counsel and
on the briefs).

Tamar Y. Lerer, Assistant Deputy Public Defender,
argued the cause for amicus curiae Public Defender of
New Jersey (Joseph E. Krakora, Public Defender,
attorney; Tamar Y. Lerer, of counsel and on the brief).

Brian D. Kenney argued the cause for amicus curiae
Association of Criminal Defense Lawyers of New Jersey

(Einhorn, Barbarito, Frost & Botwinick, attorneys; Brian D. Kenney, on the brief).

Frank Muroski, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Andrew J. Bruck, Acting Attorney General, attorney; Frank Muroski, of counsel and on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

In this interlocutory appeal, we consider the admissibility of the lay opinion testimony of defendant Damian Sanchez's parole officer, Cheryl Annese. The parole officer, who had met with defendant more than thirty times as she supervised him on parole, told a detective investigating a homicide and robbery that defendant was the individual depicted in a photograph derived from surveillance video taken shortly after the crimes.

In a pretrial hearing, the trial court excluded Annese's lay opinion testimony on the ground that it did not satisfy N.J.R.E. 701's requirements that the testimony "(a) is rationally based on the witness' perception; and (b) will assist [the jury] in understanding the witness' testimony or determining a fact in issue." The Appellate Division granted the State's motion for leave to appeal. It held that the disputed lay opinion testimony met the requirements of N.J.R.E. 701, and that the evidence should not be excluded as unduly prejudicial under N.J.R.E. 403. The

Appellate Division accordingly concluded that the trial court abused its discretion when it barred the testimony, and it reversed the trial court's determination.

We granted defendant's motion for leave to appeal. We hold that Annese's lay opinion testimony is rationally based on the witness's perception, and that it therefore satisfies the first prong of N.J.R.E. 701. Based on Annese's extensive contacts with defendant, the absence of any other identification testimony, and the quality of the surveillance photograph, we further conclude that the testimony meets the second requirement of N.J.R.E. 701 because it will assist the jury in determining a fact at issue in defendant's trial. Sanitized to avoid disclosure of defendant's status as a parolee at the time of his alleged offense, Annese's lay opinion testimony will not be so prejudicial that its probative value is substantially outweighed by the risk of undue prejudice, and that testimony should not be excluded under N.J.R.E. 403.

We thus concur with the Appellate Division that the trial court abused its discretion when it barred Annese's lay opinion testimony, and we affirm the Appellate Division's decision.

## I.

### A.

We derive the facts from the record presented to the trial court.

3

On September 8, 2017, the Pennsauken Police Department received a 9-1-1 call from two residents regarding the shooting of their neighbor in his apartment. The Police Department dispatched officers to the scene. The officers found the body of J.M., a twenty-five-year-old man, lying face-down on a mattress in his apartment. J.M. had sustained a gunshot wound to the head.

Interviewed by police officers, one of the neighbors who had made the 9-1-1 call stated that she had seen a male wearing a black hoodie over his head enter J.M.'s apartment, and that she heard a loud "boom" seconds later. The neighbor stated that she looked out her window and observed the man she had previously seen wearing the black hoodie, accompanied by a second man with a green hoodie over his head, running away from the building. The neighbor entered J.M.'s apartment, found his body, and saw his girlfriend, J.F., holding their child and trying to dial her cellphone.

J.F. told police that she had been in the apartment with the victim and two of their children when she heard the front door open. She said that she saw a man wearing a mask over his face and black clothing enter the apartment. J.F. stated that the man pulled out a gun, asked J.M. where "the money" was, and shot J.M. in the head before he had the chance to respond. J.F. said that the man then pointed the gun at her and demanded to know where the safe was, and that she showed him a safe that contained approximately $10,000. J.F. told police that a second man,

4

whom she described as a 5'9" Hispanic man with a stocky build, assisted the shooter in removing the safe from the apartment.

J.F. told police that she saw the two men depart in a red or burgundy "older model Buick" with New Jersey license plates, but that she was unable to read the license plate number. Surveillance video taken shortly after the homicide and robbery depicted a burgundy Buick Century occupied by a driver and two passengers leaving the apartment building's parking lot.

Two days after the homicide, the Camden County Prosecutor's Office circulated to law enforcement agencies a flyer entitled "Attempt to Locate." The flyer stated that a "red/burgundy" Buick Century, model year 1997-2005, was "possibly used" in a homicide. The flyer identified the date and location of the homicide.

The flyer included a still photograph derived from the surveillance video. In the photograph, taken from a location slightly above and to the right of the Buick, the driver is not seen, but the faces of a male passenger in the right front seat and a male passenger in the right back seat are visible through the vehicle's open windows.

The flyer stated that "[t]wo individuals in the photograph are described as a Hispanic male, stocky build approx 5'9 and the second male is a thin black male approximately 20-30 years old." The flyer directed that "[i]f these subjects are

5

located or if anyone has information on their identity," the person with such information should contact the investigating officers.

In response to the flyer, Annese contacted the detective leading the investigation. She identified the front-seat passenger depicted in the photograph as defendant, a parolee whom she supervised. Annese stated that she had met with defendant at least twice a month in the fifteen months since he was released after serving a term of incarceration for aggravated manslaughter. She also told the detective that approximately a week after the homicide and robbery identified in the flyer, defendant had informed her that he had "probably dropped" his phone and had changed his telephone number.

Codefendant Danny Smith was arrested and charged in connection with the homicide and robbery. Police learned that Smith's girlfriend was the owner of a burgundy Buick similar to the vehicle depicted in the surveillance video. Pursuant to search warrants, investigators reviewed Smith's cellphone and discovered text messages exchanged between defendant and Smith.

B.

1.

A grand jury indicted defendant for first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); two counts of first-degree armed robbery, N.J.S.A. 2C:15-1(a)(2); two counts of first-degree conspiracy to commit armed robbery, N.J.S.A. 2C:5-2

6

and 2C:15-1(a)(2); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); second-degree certain persons not to possess weapons, N.J.S.A. 2C:39-7(b); two counts of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(2); and fourth-degree aggravated assault by pointing a firearm, N.J.S.A. 2C:12-1(b)(4).

Defendant filed a pretrial motion to exclude Annese's testimony about her identification of defendant as one of the individuals in the surveillance photograph.

The trial court ruled that Annese's testimony was inadmissible as lay opinion testimony under N.J.R.E. 701. It found that the testimony did not satisfy the rule's requirement that the testimony be based on the perception of the witness because Annese did not witness the homicide or robbery, see defendant in the Buick, or have "firsthand" knowledge that defendant was in the Buick as it left the crime scene.

The trial court also found that the evidence did not satisfy the requirement that the testimony assist the jury in understanding the witness's testimony or determining a fact in issue in order to be admissible under N.J.R.E. 701. The trial court viewed the proffered evidence to invade the province of the jury.

The trial court held that even if Annese's testimony were to meet the requirements of N.J.R.E. 701, it should be excluded under N.J.R.E. 403. The court

7

concluded that what it viewed to be the sole purpose of the testimony -- to establish the reason why law enforcement investigated and charged defendant -- could be achieved by a detective's testimony that defendant became a suspect based upon information received by law enforcement. The court reasoned that the evidence was highly prejudicial and that no curative instruction could eliminate its prejudicial impact.

The trial court entered an order excluding Annese's lay opinion testimony.

2.

The State moved pursuant to Rule 2:5-6(a) for leave to file an interlocutory appeal. The Appellate Division granted the State's motion.

The Appellate Division distinguished this case from State v. Lazo, 209 N.J. 9, 19-25 (2012), in which this Court reversed the defendant's conviction based on the improper admission of testimony from a detective unacquainted with the defendant that the defendant's arrest photograph resembled a composite sketch prepared in a criminal investigation. Noting that "[t]he law in this area is scant" and that, in Lazo, we cited federal decisions allowing law enforcement officers acquainted with suspects to provide lay opinion testimony identifying those suspects in crime-scene photographs or video recordings, the appellate court here relied on United States v. Beck, 418 F.3d 1008 (9th Cir. 2005). The court relied on the Ninth Circuit's holding in Beck that a probation officer could testify about his

identification of the defendant from a surveillance photograph based on his prior contact with the defendant, with the testimony sanitized to conceal the defendant's probationary status. (citing 418 F.3d at 1015). The Appellate Division concluded that, consistent with federal appellate courts' interpretations of Federal Rule of Evidence 701, Annese's lay opinion testimony was admissible under N.J.R.E. 701.

The Appellate Division noted that Annese could testify that she and defendant had a professional relationship requiring regular meetings, thus establishing her frequent contact with him without disclosing to the jury his parole status or prior crime. The court acknowledged that defendant and his counsel would confront a strategic choice in determining whether to disclose on cross-examination Annese's status as defendant's parole officer in order to demonstrate her bias, but it viewed her testimony's probative value to substantially outweigh any potential prejudice.

The Appellate Division accordingly reversed the trial court's determination and remanded the matter to the trial court.

3.

We granted defendant's motion for leave to appeal. 241 N.J. 383 (2020). We also granted the motions of the New Jersey Office of the Public Defender, the Association of Criminal Defense Lawyers of New Jersey, and the Attorney General to appear as amici curiae.

## II.

### A.

Defendant asserts that the Appellate Division should have held that the trial court's determination was a proper exercise of its discretion. He contends that Annese, who was not present when the shooting occurred or when the surveillance video was taken, cannot provide testimony that is rationally based on her perception of the events or assist the jury in its determination of any fact in issue, as N.J.R.E. 701 requires. Defendant asserts that his appearance has not changed since the date of his alleged offenses, and argues that the jury is capable of comparing his appearance to that of the individual depicted in the surveillance photograph without Annese's testimony. He contends that the Appellate Division improperly applied the standard of N.J.R.E. 403 to Annese's potential testimony, and that the court did not consider the prejudicial impact of that testimony on his ability to cross-examine the witness.

### B.

The State argues that the Appellate Division properly concluded that Annese's testimony, which is the State's only identification evidence, is so central to the State's case that its probative value far outweighs any prejudicial effect. Relying on federal decisions, the State contends that there is no per se bar to the admission of law enforcement lay opinion testimony identifying a suspect in a

10

photograph or video recording. It asserts that, under N.J.R.E. 701, a lay witness may opine on the identity of a person depicted in a photograph if there is a basis to conclude that the witness is more likely than the jury to correctly identify the defendant in the photograph. The State refutes defendant's claim that he would be placed in an untenable position by the admission of Annese's testimony, and argues that evidence should not be rejected simply because its admission requires counsel to make tactical decisions as to the scope of cross-examination.

C.

Amicus curiae the New Jersey Office of the Public Defender contends that in the photograph at issue, the face of the individual whom Annese identified as defendant is indiscernible, and that Annese must have based her identification on the information about the crime that accompanied the photograph in the flyer. Amicus asserts that the testimony should be excluded because its probative value is far outweighed by its prejudicial impact.

D.

Amicus curiae the Association of Criminal Defense Lawyers of New Jersey contends that a lay witness's identification of a defendant in a still video image does not meet the requirements of N.J.R.E. 701 and should be excluded under N.J.R.E. 403. It asserts that the admission of Annese's testimony would violate defendant's confrontation rights.

11

## E.

Amicus curiae the Attorney General contends that the trial court's ruling was a misapplication of N.J.R.E. 701 and should therefore not be afforded deference. Amicus argues that Annese's testimony was admissible lay opinion testimony but cautions that her testimony should be sanitized to avoid any potential prejudice to defendant.

## III.

## A.

We review the trial court's decision to exclude Annese's testimony regarding her identification of defendant for abuse of discretion. State v. Singh, 245 N.J. 1, 12 (2021); see also State v. LaBrutto, 114 N.J. 187, 197 (1989) ("The admissibility of opinion evidence rests within the discretion of the trial court."). We do not reverse the ruling of the trial court unless it "was so wide of the mark that a manifest denial of justice resulted." Singh, 245 N.J. at 13 (quoting State v. Brown, 170 N.J. 138, 147 (2001)).

## B.

Lay opinion is admissible "if it falls within the narrow bounds of testimony that is based on the perception of the witness and that will assist the jury in performing its function." Id. at 14 (quoting State v. McLean, 205 N.J. 438, 456 (2011)). N.J.R.E. 701 was adopted to "ensure that lay opinion is based on an

adequate foundation." Ibid. (quoting State v. Bealor, 187 N.J. 574, 586 (2006)). As amended in 2019, the rule provides:

> If a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences may be admitted if it:
>
> > (a) is rationally based on the witness' perception; and
>
> > (b) will assist in understanding the witness' testimony or determining a fact in issue.
>
> [N.J.R.E. 701].

The rule thus imposes two distinct requirements for the admission of lay opinion testimony. We consider each in turn.

## C.

### 1.

N.J.R.E. 701's first prong requires that lay opinion testimony be based on the witness's "perception," a term defined in predecessor rules, Evid. R. 56(1) and 1(14), as "the acquisition of knowledge through one's own senses." McLean, 205 N.J. at 456-57 (citing 1991 Supreme Court Committee cmt. on N.J.R.E. 701).

Thus, in order for lay opinion testimony to satisfy the first component of N.J.R.E. 701, the "witness must have actual knowledge, acquired through his or her senses, of the matter to which he or she testifies." LaBrutto, 114 N.J. at 197; see also McLean, 205 N.J. at 456-57 (holding that the witness must have acquired

13

the information "through use of one's sense of touch, taste, sight, smell or hearing"); Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 701 (2021) (noting that under the rule's first prong, "it is merely required that the witness have actual knowledge, acquired through the use of his senses, of the matter testified to").

The "perception" requirement distinguishes lay opinion testimony from expert testimony admitted pursuant to N.J.R.E. 702 and 703; expert witnesses may base their opinion testimony on otherwise inadmissible hearsay, provided that it is hearsay of the type reasonably relied upon by experts in their fields of expertise. McLean, 205 N.J. at 460 (citing N.J.R.E. 703); see also Singh, 245 N.J. at 14-15 (noting that the perception requirement in N.J.R.E. 701 limits the scope of lay testimony, as contrasted with expert testimony).

Case law illustrates the application of N.J.R.E. 701's first prong. In Lazo, a detective who "had not witnessed the crime and did not know [the] defendant" testified that he chose the defendant's arrest photograph for a photo array because it looked like a composite sketch prepared based on witnesses' descriptions of the suspect. 209 N.J. at 24.[1] We observed that this testimony, which was not based on

---

[1] As we noted in Lazo, the officer's testimony about the reason he included the defendant's photograph in the photo array shown to the witness ran afoul of State v. Branch, 182 N.J. 338, 346-54 (2005), and that error led in turn to the trial court's misapplication of N.J.R.E. 701. 209 N.J. at 21-22. In Branch, the Court held that when an officer testifies about a witness's identification of

14

the detective's perception, "conveyed his approval of the victim's identification by relaying that he, a law enforcement officer, thought defendant looked like the culprit as well." Ibid. We thus concluded that the testimony failed to meet N.J.R.E. 701's first requirement.

In contrast, in LaBrutto, we affirmed the trial court's ruling that a police officer's testimony about the location at which two vehicles collided was admissible because it was based on his "personal observations of the tire tracks, scuff marks, debris, the position of the two vehicles, and the nature of the vehicles' damage." 114 N.J. at 193, 201. We viewed the officer's testimony to be rationally based on his perception, as N.J.R.E. 701 requires. Id. at 199-202.

We also determined that a police officer's lay opinion met N.J.R.E. 701's first prong in Singh, 245 N.J. at 19-20. There, an armed robbery was captured on surveillance video and the officer who arrested the defendant was properly permitted to testify that the sneakers worn by the perpetrator in the video were "similar" to the sneakers worn by the defendant when the officer encountered him shortly after the robbery. Id. at 5-6, 19-20. Although the officer did not witness the crime, he had personal knowledge of the sneakers worn by the defendant in its

---

a suspect, "[w]hy the officer placed the defendant's photograph in the array is of no relevance to the identification process and is highly prejudicial," violating the defendant's confrontation rights as well as the rules of evidence. 182 N.J. at 352-53.

15

immediate aftermath, and his testimony thus satisfied N.J.R.E. 701's first prong. Id. at 19-20.

In Beck, cited in Lazo, 209 N.J. at 22, the Ninth Circuit held that Federal Rule of Evidence 701 authorized the admission of a federal probation officer's testimony that the defendant, whom the officer supervised on probation, was the individual depicted in a photograph taken from a surveillance video of a bank robbery. 418 F.3d at 1013-15. The Ninth Circuit held that the witness's testimony about the resemblance between the defendant and the individual in the photograph was "rationally based" on his perception, as N.J.R.E. 701's federal counterpart, Fed. R. Evid. 701, required. Id. at 1013-16.[2]

N.J.R.E. 701's first prong thus requires only that a lay witness testify based on knowledge personally acquired through the witness's own senses, rather than on the hearsay statements of others. N.J.R.E. 701; Singh, 245 N.J. at 14-15; Lazo, 209 N.J. at 24; LaBrutto, 114 N.J. at 198. The witness need not have witnessed the crime or been present when the photograph or video recording was made in order

---

[2] Fed. R. Evid. 701's language is similar but not identical to the language of N.J.R.E. 701. It provides that "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

to offer admissible testimony.  See Singh, 245 N.J. at 19-20; Beck, 418 F.3d at 1015.

2.

Applying those principles, we conclude that the trial court erred when it found that Annese's testimony would fall short of N.J.R.E. 701's first requirement because she did not witness the shooting, see defendant in the Buick, or possess "firsthand" knowledge that defendant was in the Buick.  N.J.R.E. 701's "perception" prong imposes no such requirement.

Annese became familiar with defendant's appearance by meeting with him on more than thirty occasions during his period of parole supervision.  Her identification of defendant as the front-seat passenger in the surveillance photograph was "rationally based on [her] perception," as N.J.R.E. 701 requires.

Accordingly, the State satisfied the first prong of N.J.R.E. 701.

D.

1.

N.J.R.E. 701's second prong requires that lay opinion testimony will assist the jury "in understanding the witness' testimony or determining a fact in issue." N.J.R.E. 701(b).  Such testimony must "assist the trier of fact either by helping to explain the witness's testimony or by shedding light on the determination of a disputed factual issue."  Singh, 245 N.J. at 15 (quoting McLean, 205 N.J. at 458).

17

A witness may not offer lay opinion on a matter "as to which the jury is as competent as [the witness] to form a conclusion." McLean, 205 N.J. at 459 (quoting Brindley v. Firemen's Ins. Co., 35 N.J. Super. 1, 8 (App. Div. 1955)); see also Biunno, Weissbard & Zegas, cmt. 3 on N.J.R.E. 701.

In Lazo, we noted considerations identified by federal appellate courts deciding whether lay opinion testimony will assist the jury, as required by Fed. R. Evid. 701. 209 N.J. at 22-24 (citing Beck, 418 F.3d at 1011-15; United States v. LaPierre, 998 F.2d 1460, 1465 (9th Cir. 1993); United States v. Butcher, 557 F.2d 666, 670 (9th Cir. 1977); United States v. Calhoun, 544 F.2d 291, 295 (6th Cir. 1976)). In the setting of this appeal, we again distill from federal cases factors that inform a trial court's determination whether lay opinion testimony will assist the jury.

First, the nature, duration, and timing of the witness's contacts with the defendant are important considerations. In United States v. Walker, the Second Circuit found a probation officer's identification testimony to be helpful to the jury, in light of the officer's extensive contacts with the defendant and his opportunity to observe the defendant's gait and other physical traits reflected in surveillance video but not observable by the jury at trial. 974 F.3d 193, 205 (2d Cir. 2020), cert. denied, ___ U.S. ___ (2021). In United States v. Farnsworth, the Eighth Circuit affirmed the admission of two parole officers' lay opinion testimony

18

identifying the defendant as the man disguised as a security guard in a bank-robbery surveillance video. 729 F.2d 1158, 1160-61 (8th Cir. 1984). The court emphasized that one officer had over seventy-five meetings with the defendant and the other had twenty meetings with the defendant. Ibid. In United States v. Jackman, the First Circuit held that "[f]amiliarity with the defendant's appearance at the time the crime was committed" is important in the determination of whether testimony will assist the jury, as is "familiarity with the defendant in clothing similar to that worn by the person in the photograph at issue, or general familiarity with the defendant's appearance acquired over a period of time and in a variety of contexts." 48 F.3d 1, 5 (1st Cir. 1995). And, in Beck, the Ninth Circuit ruled that "lay witness testimony is permissible where the witness has had 'sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful.'" 418 F.3d at 1015 (quoting United States v. Henderson, 241 F.3d 638, 650 (9th Cir. 2000)).[3]

_____

[3] Appellate courts in several of our sister states have similarly held that lay opinion testimony identifying a defendant in a photograph or videotape, offered by witnesses with extensive contacts with the defendant, will assist the jury. See, e.g., Hardy v. State, 804 So. 2d 247, 268-75 (Ala. Crim. App. 1999) (citing the witnesses' "familiarity derived from a . . . close relationship to, or substantial and sustained contact with" the defendant as a factor placing the witnesses "in a better position to identify him than the jury" (omission in original) (quoting United States v. Pierce, 136 F.3d 770, 774 (11th Cir. 1998))), aff'd sub nom. Ex parte Hardy, 804 So. 2d 298 (Ala. 2000); Commonwealth v. Pleas, 729 N.E.2d 642, 646 (Mass. App. Ct. 2000) (citing the witness's familiarity with the defendant's appearance at the time of a

Conversely, when the witness has had little or no contact with the defendant, it is unlikely that his or her lay opinion testimony will prove helpful. See Lazo, 209 N.J. at 24 (holding that the lay opinion identification testimony of an officer unfamiliar with the defendant provided no assistance to the jury and invaded its province). In LaPierre, the court rejected the testimony of a police officer who had never met or seen the defendant that a bank surveillance photograph resembled that defendant. 998 F.2d at 1465. As the court noted, the officer's knowledge of the defendant's appearance "was based entirely on his review of photographs of [the defendant] and witnesses' descriptions of him." Under those circumstances, the court found, "[w]hether the person sitting before the jury was the one pictured in the surveillance photographs was a determination properly left to the jury." Ibid. In similar circumstances, the Eleventh Circuit held in United States v. Pierce that the testimony of a witness unacquainted with the defendant "is not based on anything more than the evidence the jury would have before it at trial." 136 F.3d 770, 774 (11th Cir. 1998).

---

photograph as a factor favoring admission of lay opinion identifying the defendant); People v. Russell, 567 N.Y.S.2d 548, 553-54 (App. Div. 1991) (holding that lay opinion may assist a jury when "a sufficient foundation has been established to show that the opinion is rationally based upon the perception of the witness (e.g., the extent of the witness's familiarity with the defendant within a time frame reasonably connected with the date of the crime)"), aff'd, 594 N.E.2d 922 (N.Y. 1992).

Even a witness who has some familiarity with the defendant may be barred from providing lay opinion if he or she lacks information about the defendant's appearance at the time of the alleged offense. In United States v. Fulton, the Third Circuit deemed two investigating officers' lay opinions unhelpful to the jury because neither officer was familiar "with the defendant's appearance at the time the crime was committed, the defendant's customary manner of dress, or the defendant in a variety of circumstances." 837 F.3d 281, 299 (3d Cir. 2016).

Second, if there has been a change in the defendant's appearance since the offense at issue, law enforcement lay opinion identifying the defendant may be deemed helpful to the jury. See Lazo, 209 N.J. at 23. In Beck, the Ninth Circuit identified "whether the defendant disguised his or her appearance during the offense or altered his or her appearance before trial" as relevant considerations in the application of Fed. R. Evid. 701's second prong. 418 F.3d at 1015. The Eleventh Circuit similarly recognized a change in appearance as a factor supporting admission of lay opinion identification evidence in Pierce, 136 F.3d at 774-75.

Third, "[c]ourts evaluating whether a law enforcement official may offer a lay opinion on identification also consider, among other factors, whether there are additional witnesses available to identify the defendant at trial." Lazo, 209 N.J. at 23. As the Ninth Circuit has cautioned, law enforcement lay opinion identifying a

defendant in a photograph or video recording "is not to be encouraged, and should be used only if no other adequate identification testimony is available to the prosecution." Butcher, 557 F.2d at 670; see also LaPierre, 998 F.2d at 1465; United States v. Young Buffalo, 591 F.2d 506, 513 (9th Cir. 1979).

Fourth, the quality of the photograph or video recording at issue may be a relevant consideration. If the photograph or video recording is so clear that the jury is as capable as any witness of determining whether the defendant appears in it, that factor may weigh against a finding that lay opinion evidence will assist the jury. In United States v. Sanchez, the Eighth Circuit held that "[a] witness's opinion concerning the identity of a person depicted in a surveillance photograph is admissible if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury." 789 F.3d 827, 837 (8th Cir. 2015) (alteration in original) (quoting United States v. Anderson, 783 F.3d 727, 746 (8th Cir. 2015)). The court observed that "the relatively low quality of the footage" presented in that case favored the admission of the lay opinion because "the surveillance photograph made it difficult for the jury to make a positive identification of the defendant." Ibid. (quoting Anderson, 783 F.3d at 747).

Conversely, if the photograph or video recording is of such low quality that no witness -- even a person very familiar with the defendant -- could identify the

22

individual who appears in it, lay opinion testimony will not assist the jury, and may be highly prejudicial. As the First Circuit observed, a lay witness's testimony identifying a defendant in a surveillance photograph is helpful to the jury "when the witness possesses sufficiently relevant familiarity with the defendant that the jury cannot also possess, and when the photographs are not either so unmistakably clear or so hopelessly obscure that the witness is no better-suited than the jury to make the identification." Jackman, 48 F.3d at 4-5; accord Pierce, 136 F.3d at 774.

Those four factors are not exclusive; other considerations may be relevant to the question of whether lay opinion testimony will assist the jury in a given case. Moreover, no single factor is dispositive. See Lazo, 209 N.J. at 20-24 (discussing a range of factors that may be relevant to a determination of admissibility under N.J.R.E. 701); Beck, 418 F.3d at 1015 ("The absence of any single factor will not render testimony inadmissible because cross-examination exists to highlight potential weaknesses in lay opinion testimony.").

2.

Applying those factors, we consider whether the surveillance photograph at issue in this appeal "will assist in understanding the witness' testimony or determining a fact in issue." N.J.R.E. 701(b).

Annese's contacts with defendant were more than sufficient to enable her to identify him in the surveillance photograph more accurately than a jury could.

23

Annese met with defendant at least twice per month in the fifteen months preceding her review of the photograph. She was familiar with his appearance over that period, which included the date of the alleged offenses. Accordingly, the witness's contacts with the defendant favor a determination that her testimony would assist the jury in determining whether defendant was involved in the offense at issue.

Because this case has yet to be tried, it is unclear whether a change in defendant's appearance between the date of the surveillance photograph and the date of trial is a relevant consideration. The record before the Court does not indicate any such change in defendant's appearance to date. Accordingly, this factor does not support or undermine a finding that N.J.R.E. 701's second prong is satisfied in this case.

No eyewitness identified the man who helped the person who shot J.M. to remove the safe from J.F.'s apartment. Annese's testimony that defendant was the front-seat passenger in the surveillance photograph would provide the State's only identification testimony regarding defendant. That factor favors a holding that her lay opinion testimony would assist the jury.

Finally, the quality of the photograph favors the admission of Annese's testimony. The surveillance photograph is neither so blurry that the subject's features are indistinguishable, nor so clear that jurors unacquainted with defendant

24

could determine as accurately as Annese whether the Buick's front-seat passenger was defendant. That factor similarly weighs in favor of her testimony's admission into evidence under N.J.R.E. 701's second prong.

Accordingly, we conclude that Annese's lay opinion identification would "assist in understanding the witness' testimony or determining a fact in issue." N.J.R.E. 701(b). We agree with the Appellate Division that the trial court erred when it concluded that the testimony failed to satisfy N.J.R.E. 701's second prong.

E.

Our determination that the surveillance photograph was admissible under N.J.R.E. 701 does not end the inquiry. We also apply N.J.R.E. 403(a), which bars otherwise admissible evidence if its "probative value is substantially outweighed by the risk of . . . [u]ndue prejudice."

We agree with the trial court that it would be highly prejudicial to defendant if the jury learned that defendant was on parole after serving a term of incarceration for aggravated manslaughter. The probative value of any such testimony would be substantially outweighed by its prejudicial effect, and N.J.R.E. 403 would thus bar the evidence.

Such prejudice, however, can be addressed by sanitizing the testimony. In Farnsworth, for example, the Eighth Circuit concluded that the lay witness identification testimony by the defendant's parole officer was not unduly

25

prejudicial because the witness did not reveal "his employment or his relationship with the defendant," and the State elicited from the witness "only the number of times [the] witness had seen the defendant and the duration of those visits." 729 F.2d at 1161. The Ninth Circuit endorsed similar sanitization in Beck, in which the probation officer identified his contact with defendant as a "professional relationship" and did not reveal his status as a law enforcement officer. See 418 F.3d at 1014.

Here, the trial court should direct that Annese refrain from revealing that she is a parole officer or identifying herself as a law enforcement officer in her testimony on direct examination. Annese should explain her familiarity with defendant by stating that she and defendant had a professional relationship that required them to meet at least twice a month for fifteen months prior to the date on which she identified him in the surveillance photograph and providing other neutral relevant facts regarding the meetings. By virtue of that testimony, the jury will be in a position to assess Annese's familiarity with defendant's appearance without being informed of defendant's prior conviction.

We concur with the Appellate Division that based on the record here, Annese's testimony, as sanitized on the State's direct examination, will not unduly prejudice defendant's ability to cross-examine or implicate his right of

26

confrontation under the United States or New Jersey Constitutions. See U.S.

Const. amend. VI; N.J. Const. art. I, ¶ 10.[4]

As in other settings in which testimony is sanitized to limit its prejudicial effect, defendant may be required to make a strategic decision about the scope of Annese's cross-examination, weighing the value of impeaching Annese's credibility by inquiring about her employment as a parole officer against the risk of prejudice if defendant's parole status is disclosed. The potential necessity of such a tactical decision does not render Annese's testimony inadmissible, and it does not implicate defendant's confrontation rights.

The trial court may conduct a hearing outside the presence of the jury under N.J.R.E. 104 to resolve any disputes about the scope of Annese's testimony on direct and cross-examination, to ensure that the witness is properly instructed about the scope of her testimony, and to minimize any prejudice to defendant. The trial court may also charge the jury regarding its consideration of Annese's testimony in

---

[4] We do not agree with the Sixth Circuit's rejection of sanitized law enforcement lay opinion identification testimony in Calhoun, the decision on which defendant primarily relies in his argument that the testimony in this appeal should be excluded as unduly prejudicial on N.J.R.E. 403. See Calhoun, 544 F.2d at 294-96. We concur with later federal appellate decisions that have rejected the per se rule adopted in Calhoun and have endorsed sanitization of lay opinion testimony in appropriate cases as a method of addressing its potentially prejudicial impact. See, e.g., United States v. Contreras, 536 F.3d 1167, 1171-72 (10th Cir. 2008); United States v. Wright, 904 F.2d 403, 405 n.3 (8th Cir. 1990); Farnsworth, 729 F.2d at 1161.

27

its deliberations.  If Annese testifies for the State, defendant may offer the lay opinion testimony of witnesses to counter her identification of defendant as the individual in the surveillance photograph.

Accordingly, we concur with the Appellate Division that, sanitized as described above, Annese's lay opinion testimony identifying defendant as the individual in the surveillance photograph is admissible.  The trial court therefore abused its discretion when it excluded that testimony.  The jury may, of course, decide to discredit Annese's testimony and determine that the individual in the surveillance video is not defendant, but her testimony may be presented at trial.

## IV.

The judgment of the Appellate Division is affirmed, and the matter is remanded to the trial court for further proceedings in accordance with this opinion.


CHIEF JUSTICE RABNER and JUSTICES FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE PATTERSON's opinion. JUSTICE LaVECCHIA filed a dissent, in which JUSTICE ALBIN joins.

State of New Jersey,

Plaintiff-Respondent,

v.

Damian Sanchez,

Defendant-Appellant.

JUSTICE LaVECCHIA, dissenting.

When a jury is asked whether a surveillance photograph depicts the defendant, and the defendant's appearance has not changed from the time the photograph was taken to the time he appears in court, the jury will not typically require assistance in determining if the photo is a match. In such cases, the task of factfinding remains the exclusive province of the jury. But when there is reason to believe someone familiar with the defendant can assist the jury in making that comparison, the Rules of Evidence may permit the introduction of lay witness opinion testimony. For example, where there is some alteration in appearance between the two events, due to time, changed circumstances, or efforts by the defendant to disguise himself, then testimony by a person familiar with the defendant -- even if that person is a law enforcement officer -- may rightly be admitted to assist the jury.

1

I believe it is incumbent on this Court to give courts and counsel the clearest guideposts possible to use when considering whether to admit such testimony, particularly when the testimony concerns identification of an individual or an item that the jury is capable of perceiving on its own.

New Jersey Rule of Evidence 701 provides that

> If a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences may be admitted if it:
>
> (a) is rationally based on the witness' perception; and
>
> (b) will assist in understanding the witness' testimony or determining a fact in issue.

The Rule's requirements work in tandem "to ensure that lay opinion is based on an adequate foundation." Neno v. Clinton, 167 N.J. 573, 585 (2001). Subsection (a) requires that a lay opinion be limited to matters directly perceived by a witness "through use of one's sense of touch, taste, sight, smell or hearing." State v. McLean, 205 N.J. 438, 457 (2011). Subsection (b) limits lay opinion testimony to that which "will assist the trier of fact either by helping to explain the witness's testimony or by shedding light on the determination of a disputed factual issue." Id. at 458.

Even where those requirements are met, "[t]he Rule does not permit a witness to offer a lay opinion on a matter 'not within [the witness's] direct ken . . . and as to which the jury is as competent as he to form a conclusion.'" Id.

2

at 459 (second alteration and omission in original) (quoting <u>Brindley v. Firemen's Ins. Co.</u>, 35 N.J. Super. 1, 8 (App. Div. 1955)). Indeed, in construing subsection (b), this Court has noted that helpfulness becomes manifest where a witness possesses knowledge as to something "unfamiliar to the average juror." <u>Id.</u> at 458.

Whether lay opinion testimony is helpful -- especially when coming from a law enforcement officer -- is a critical element in determining its admissibility.[1] Some of the factors considered by the majority in allowing lay opinion testimony are not relevant to the element of helpfulness.

I write separately to express reservations about some factors the majority draws, approvingly, from federal case law. Beyond those misgivings about the guidance provided by the majority, I also believe the trial court should be the one to evaluate whether the proffered testimony of the law enforcement officer in this matter would meet the requirement of being of assistance to the jury at the time of trial.

---

[1] In <u>State v. Singh</u>, 245 N.J. 1 (2021), this Court upheld the admission of testimony by a police detective who offered for the jury his lay opinion that shoes depicted in a video recording appeared similar to shoes that were admitted into evidence. I wrote separately in <u>Singh</u> because I did not believe the jury was assisted by having a witness perform a comparison that the jury was equally capable of performing. In this matter, I do not believe that the majority adequately explains why this officer's perception is of meaningful assistance to the jury, based on the record developed thus far.

Accordingly, I respectfully dissent. I would reverse and remand this matter to the trial court, rather than conclude at this time that the proffered testimony must be admitted.

I.

Following a robbery and shooting in Pennsauken, the Camden County Prosecutor's Office circulated a "Be On the Look Out" flyer to several local law enforcement agencies. The flyer featured a 3" by 5" still frame from a video recorded by surveillance cameras outside the building where the shooting occurred. The still frame depicted a burgundy Buick Century. Through the vehicle's open window, one can view an individual in the front passenger's seat. That individual's features are barely discernable in the grainy image. And, because the individual is seated, his height and build are similarly unknowable from the still frame. However, the flyer included a description of the front-seat passenger that was provided by a witness to the shooting: "Hispanic male, stocky build approx 5'9."

Defendant's parole officer, Cheryl Annese, received the flyer. Believing that the depicted individual was one of her parolees, Annese contacted the detective listed on the flyer. It is her identification of defendant from that flyer that gives rise to the evidentiary issue in this appeal.

4

At trial, the State sought to admit Annese's testimony regarding her conclusion that the individual depicted in the photograph was defendant. The trial court ruled Annese's testimony inadmissible. The court held that Annese's testimony did not satisfy N.J.R.E. 701(a)'s requirement of being based on her perception because she had not viewed defendant at the scene of the crime. The court also determined that Annese's testimony would not satisfy N.J.R.E. 701(b)'s requirement that lay opinion testimony be helpful to the jury, finding instead that her identification invaded the province of the jury.

The Appellate Division reversed, concluding that Annese's testimony satisfied N.J.R.E. 701's dual requirements and should be admitted. The Appellate Division distinguished State v. Lazo, 209 N.J. 9, 19-25 (2012), and relied largely on federal precedent applying Fed. R. Evid. 701, including United States v. Beck, 418 F.3d 1008 (9th Cir. 2005). The matter is here on interlocutory review. 241 N.J. 383 (2020).

## II.

### A.

I agree with the majority in many respects. According to this Court's precedent, see Singh, 245 N.J. at 17-20, the trial court's ruling on the perception requirement of subpart (a) of N.J.R.E. 701 was mistaken. This

5

case's focus is properly on the helpfulness aspect of the Rule. And, like the majority, I too would judge helpfulness by the totality of the circumstances. I also believe it is appropriate to draw from federal court decisions applying Fed. R. Evid. 701, which largely parallels N.J.R.E. 701.

However, in my view, it is necessary in circumstances such as these that the perception requirement and the helpfulness requirement relate to each other -- the lay opinion identification must be helpful to the jury <u>because of</u> the perception of the witness. To that end, I would require that the proponent of the testimony make a specific and articulable showing that the witness's familiarity with the defendant will assist the jury's performance of its role as fact finder. That requirement better tracks the language of the Rule and would facilitate review of the basis asserted on the record for admissibility at trial and appellate levels.

Usually, that connection takes the form of "the witness possess[ing] sufficiently relevant familiarity with the defendant that the jury cannot also possess." <u>States v. Jackman</u>, 48 F.3d 1, 4-5 (1st Cir. 1995).

Examples of such applications abound in the federal jurisprudence. The witness may be familiar with the defendant's voice and can identify it on a recording, but the jury cannot gain such familiarity because the defendant has declined to testify. See, e.g., <u>United States v. Bush</u>, 405 F.3d 909, 918 (10th

Cir. 2005). The witness may know the defendant's past manner of dress, and can confirm the defendant was known to wear clothing that an individual wore in a photograph or video of a crime scene. See, e.g., United States v. Henderson, 241 F.3d 638, 651 (9th Cir. 2000), as amended (Mar. 5, 2001) (a detective's testimony was helpful because the detective had "special knowledge of Henderson's appearance; he had seen Henderson wear a suit and hat similar to those worn by the robber depicted in the January 16th robbery surveillance photographs"); Jackman, 48 F.3d at 5 (the testifying witnesses had seen the defendant wear a coat similar to the coat worn by the robber); United States v. Saniti, 604 F.2d 603, 605 (9th Cir. 1979) (the testifying witnesses identified the defendant's clothing shown in surveillance photograph, and that clothing was not available for the jury to examine). Or the lay opinion witness may connect his knowledge of the defendant's gait with the pattern of movement captured by surveillance footage, familiarity a jury could not ascertain by viewing the defendant in the courtroom. United States v. Walker, 974 F.3d 193, 205 (2d Cir. 2020), cert. denied, ___ U.S. ___ (2021).

The most common way in which a witness possesses the requisite familiarity that the jury cannot is "where the witness is familiar with the defendant's appearance around the time the surveillance photograph was taken and the defendant's appearance has changed prior to trial." United States v.

Farnsworth, 729 F.2d 1158, 1160 (8th Cir. 1984) (admitting parole officers' testimony identifying the defendant because he "had grown a full beard since the time of the robbery"); see also United States v. Towns, 913 F.2d 434, 445 (7th Cir. 1990) (the defendant had shaved the mustache featured in the photograph); United States v. Borrelli, 621 F.2d 1092, 1095 (10th Cir. 1980) (the defendant had grown a mustache and changed his hairstyle, so his stepfather was better able to identify him in a bank surveillance photograph than the jury).

But where a witness's lay opinion testimony comprises nothing more than comparing the defendant as he appears at trial with the person depicted in a still frame photo from a "Be On the Lookout" flyer -- and the defendant's appearance is unchanged from the time the photo was taken -- the helpfulness of such testimony is little to none. Rather than aiding the jury in accomplishing its task, the witness enters the province of the jury by performing a comparison of defendant with the flyer photo -- a comparison the jury is equally equipped to perform. A parade of witnesses commenting on the similarity or lack of similarity between defendant and the person depicted in the flyer raises the prospect of a sideshow of lay opinion testimony -- hardly conducive to efficient trial practice in the search for truth.

Stated differently, absent a change in a defendant's appearance by the time the start of trial arrived, "juries can decide for themselves -- without identification testimony from law enforcement -- whether the person in a photograph is the defendant sitting before them." Lazo, 209 N.J. at 23. A change in appearance is admittedly a low bar to hurdle. That standard is not especially demanding. Courts may readily find that a defendant has changed in appearance when an extended period of time has passed between a witness's identification and trial. But I would leave that determination to the trial court as the trial approaches.

B.

Two other factors identified by the majority cause me concern for their potential to promote the unnecessary admission of lay opinion testimony.

1.

First, I part company with the majority's suggestion that N.J.R.E. 701 calls for an assessment of whether witnesses other than law enforcement officers are available to testify on the subject of identification. The lay opinion testimony is either intrinsically helpful or it is not. Inadmissible lay opinion testimony should not be rendered admissible because one side or the other cannot present identification testimony.

9

In <u>Lazo</u>, this Court stated that "[c]ourts evaluating whether a law enforcement official may offer a lay opinion on identification also consider, among other factors, whether there are additional witnesses available to identify the defendant at trial." 209 N.J. at 23 (citing <u>United States v. Butcher</u>, 557 F.2d 666, 670 (9th Cir. 1977); <u>State v. Carbone</u>, 180 N.J. Super. 95, 97-100 (Law Div. 1981)). However, I respectfully disagree that the unavailability of additional witnesses is a factor that may weigh <u>in favor of</u> the admission of lay opinion testimony by a law enforcement officer.

It bears mention at the outset that this Rule is not designed for the benefit of law enforcement, but rather is a Rule of general application for use by both parties.

Further, the courts that have mentioned this consideration have done so simply to stress that law enforcement officers should not serve as witnesses if an alternative witness is available. <u>See</u> <u>Butcher</u>, 557 F.2d at 670 (stating that "use of lay opinion identification by policemen or parole officers is not to be encouraged, and should be used only if no other adequate identification testimony is available to the prosecution," immediately after weighing the prejudicial effect of such testimony); <u>United States v. Henderson</u>, 68 F.3d 323, 326-28 (9th Cir. 1995) (concluding, after finding police officer identification testimony admissible under Fed. R. Evid. 701, that its prejudicial value

10

exceeded its probative value because other non-police witnesses had offered identification testimony).

I do not construe the <u>lack</u> of such alternative witnesses to, in itself, "favor[] a holding that [the] lay opinion testimony would assist the jury." <u>Ante</u> at __ (slip op. at 24). There is no basis in the text of N.J.R.E. 701(b) for importation of that consideration, which bears more relation to N.J.R.E. 403 balancing.

2.

I also respectfully disagree with the third factor set forth in the majority's approach -- that a photograph or video recording be not so blurry as to be of no utility, but not so clear that the jury can perform the comparison as ably as the witness. <u>Ante</u> at ___ (slip op. at 22-23). In my view, what matters is not the resolution of the photograph, but whether the lay witness, based on sensory perception paired with familiarity with the defendant, can see something that the jury cannot. Moreover, because I would require something more than a witness's familiarity with the defendant's physical appearance as he appears at trial, a high-quality photograph could not render a lay witness's opinion testimony unhelpful or superfluous.

In addition, the majority's reference to this factor may have the unintended consequence of creating a challenge for trial judges seeking

11

guideposts from case law.  It is impractical, if not impossible, to divine from a court's written decision whether a photograph or video it found to pass muster was more or less blurry than the photograph or video before the next court seeking to adhere to a coherent body of developing case law.

### III.

In conclusion, because I believe that a proper N.J.R.E. 701 balancing is a fact- and time-sensitive determination, I would remand to the trial court for a hearing.  In particular, assessing whether a defendant's appearance has changed is a task best resolved close to the commencement of trial.  I would reverse and remand the admissibility issue back to the trial court.

Respectfully, I dissent.